### BENTLEY *v.* THE CITY OF ATLANTA.

1. A tenant of premises situated in a city, although he has no estate in the land, is the owner of its use for the term of his rent contract, and can recover damages for any injury to such use occasioned by the erection and maintenance of a public nuisance in the street adjacent to or in the immediate neighborhood of the premises.

2. The duty, both with respect to the general public and the occupants of premises along the streets of a city, of keeping the streets free from permanent or long continued nuisances, rests primarily on the municipal government, and this duty cannot be evaded by urging the right and duty of a railway company to

bridge its line at street crossings and maintain the bridges and crossings in proper condition. If the city authorities suffer a railway company to erect a bridge at a street crossing and maintain it, together with the approaches thereto, in such manner as to render the same a public nuisance, the city is liable for the consequences just as it would be if the improper work had been . done by the city itself.

3. The declaration set forth a cause of action. The court erred in disallowing the amendments offered, and in sustaining the demurrer.

October 30, 1893.

Action for damages. Before Judge VAN EPPS. City court of Atlanta. March term, 1893.

The declaration alleges the following : The plaintiff had leased a house and lot in the city of Atlanta, fronting fifty feet on Peters street and running back one hundred feet to the right of way of the E. T., V. & G. railroad, bounded on the northeast by McDaniel street and adjoining the McDaniel street bridge. His term of lease will not expire [until] the first of September, 1893. He uses the premises as a dwelling, restaurant, ice-cream factory and family grocery. At the time he rented the same there was a bridge over the track of the E. T., V. & G. railroad on McDaniel street, which was near to and adjoining his premises; it was easily passed over and was a safe thoroughfare and used as such by the public; it had been erected by the city, which had and exercised control of the same as a part of the public street. On the first of January, 1892, the use of the premises was worth to plaintiff $50 per month, and a part of this value depended on the free and unobstructed use of McDaniel street and the bridge over the railroad on that street as then constructed and in use. He used the rear room of the house as a restaurant and dining-room where he and his family and his customers, many of whom came across the bridge, took their meals, etc. In January, 1892, the city wrongfully permitted the railroad to raise the grade of the street by raising the bridge in the middle thereof

five feet, and with full knowledge of said act of the railroad has ratified the same. This raising of the grade has resulted in a public nuisance, which result must have been known as a reasonable result by the defendant, which, now after all possible doubt has been removed, continues the wrongful grade. The passage over the bridge is not only difficult but dangerous, both ascending and descending from the middle of the bridge towards Peters street, and for loaded wagons and other vehicles it is almost impassable and diverts passage and travel to other streets. The city has recognized the danger of ascending and descending the bridge as thus raised, and the railroad put the city on notice of its danger by putting strips across the bridge to prevent horses and other animals, as well as pedestrians, from slipping while going over the bridge, and to prevent loaded wagons from running down it; but this device has not prevented the wrong it knew it was doing. Plaintiff has been damaged in the use of said premises, by the wrongful acts of defendant, $40 per month from the first of January, 1892, and said damage will last until the end of his term, all of which has been caused by the raising of the grade of the street over the bridge. He has been especially injured by the erection of the bridge over McDaniel street, in that shortly after said erection a wagoner undertook to drive over it with a wagon loaded with lumber, coming from Peters street, and started up the same, but owing to the steepness of the bridge he was unable to do so, and because of the steepness alone his wagon was forced backward down the slope towards plaintiff's house and ran against the dining-room, broke through the wall of said room, forced pieces of lumber therein, injured an organ belonging to him, knocked over a table at which he and his family were eating, and went on further with such force that it struck and knocked down a frame that he had

at his front window on Peters street, and tore up the plank of his front veranda facing Peters street. In passing by his dining room it struck the wall and knocked out two planks, to his actual damage in the sum of $50. Since that time three other wagons, from the same cause, have run backward down the bridge against his house and struck it and caused great and constant alarm to his family; and the city, well knowing these injuries, takes no steps to protect him, to his damage $500. He complained to. the officers of the city of these injuries, but they paid no attention to his complaint; and the city, well knowing the dangerous condition of the bridge, a few days ago loaded up one of its own scavenger carts with all manner of filth gathered up from the streets, and by its driver, well knowing the danger of trying to go over the bridge and that there was danger of injuring plaintiff, undertook to drive the cart over the bridge and negligently let it run back against his dining-room door and empty its contents at his very door, breaking two planks of his wall and frightening and insulting his family.

The amendments offered by the plaintiff set forth that prior to the raising of the bridge his side entrance was easy of access and used as much as the entrance fronting Peters street, but since.the raising of the bridge the access to his side entrance has been so left as to make it accessible alone by the use of a plank from his side door to the street, a distance of three feet, the grade being raised to correspond with the abutment of the bridge, which is only a few feet from his side door, leaving it in a dangerous condition; that the bridge was negligently and.improperly constructed, and amounts to an obstruction of the street; and that the railroad track should have been lowered instead of interfering. with the bridge, as the grade from Whitehall street below McDaniel street to the intersection of or near Fair

street by the railroad would have permitted the lower-ing of the railroad track.

W. A. TIGNER and JORDAN & ROBINSON, for plaintiff.

J. A. ANDERSON and FULTON COLVILLE, for defendant.

SIMMONS, Justice.

Bentley sued the City of Atlanta for damages result-ing from the raising of a bridge in a street, near to and adjoining his premises. On demurrer the court ruled that the declaration set forth no cause of action, and on objection by the defendant, disallowed two amendments offered by the plaintiff. The declaration and the amend-ments are set out in the report prefixed to this opinion.

1. It was contended on behalf of the defendant that the plaintiff had no right of action, because he was a mere tenant of the premises alleged to have been dam-aged. There is no merit in this contention. A tenant, although he has no estate in the land, is the owner of its use for the term of his rent contract, and he can re-cover damages for any injury to such use occasioned by the erection and maintenance of a public nuisance in the street adjacent to or in the immediate neighborhood of the premises. See 12 A. & E. Enc. of L. 719; Crowell v. Railroad Co., 61 Miss. 631.

2. It appears from the declaration that the bridge was raised by a railroad company whose line crossed the street under the bridge; and it was contended that the plaintiff, instead of suing the city, ought to have sued the railroad company. The duty, both with re-spect to the general public and the occupants of prem-ises along the streets of a city, of keeping the streets free from permanent or long continued nuisances, rests primarily on the municipal government; and this duty cannot be evaded by urging the right and duty of a railway company to bridge its line at street crossings and maintain the bridges and crossings in proper con-

dition. If the city authorities suffer a railway company to erect a bridge at a street crossing and maintain it, together with the approaches thereto, in such manner as to render the same a public nuisance, the city is liable for the consequences just as it would be if the improper work had been done by the city itself. Certainly this is so where the law expressly gives the city control of the matter, as was the case here. The charter of the city, after prescribing the duty of railroad companies as to the erection and repair of bridges across their tracks or road-beds where the same cross the streets of the city, declares that the mayor and general council "shall have the authority to regulate the building and repair of such bridges in so far as to declare the general character of such bridge or repairs' suitable to be made, and to provide for the drainage, light and comfort of said bridge, and the street adjacent thereto or thereunder, and to provide for the least obstruction by supports and otherwise of any portion of the street practicable and consistent with safety. In case of the failure of any railroad or railroad company, after reasonable notice to do so, to build or repair a bridge or the approaches thereto or otherwise, as provided above, said mayor and general council shall have the authority to do such building, repairing or putting in safe and comfortable condition, at the expense, with interest and costs, of such railroad or railroad company," etc. Acts 1889, p. 819. On this subject see: Jones, Neg. Municip. Corp. §119. And see Elliott, Roads and Streets, p. 44 *et seq.* (1890); Dillon, Municip. Corp. (4 ed.), §§1027, 1037.

3. The declaration set forth a cause of action, and the court erred in disallowing the amendments offered, and in sustaining the demurrer. The question of the measure of damages was not made in the court below, and we do not deal with it. The demurrer was a general one and did not raise the question as to whether all the

particular elements of damage alleged were good or bad. As some of them were good, there was enough to withstand such a demurrer.          *Judgment reversed.*