312 Ga. 164
FINAL COPY

S20G0651.  GATTO et al. v. CITY OF STATESBORO et al.

LaGrua, Justice.

Michael and Katherine Gatto filed suit against the City of Statesboro and City Clerk Sue Starling, alleging negligence and maintenance of a nuisance, after their son, Michael, died following an altercation at a bar in the University Plaza area of the City.  The trial court granted summary judgment to both defendants, based in part on sovereign immunity.  The Court of Appeals affirmed as to the City, solely on the ground of sovereign immunity.  See *Gatto v. City of Statesboro*, 353 Ga. App. 178 (1), (2) (834 SE2d 623) (2019).  This Court granted certiorari to consider the contours of municipal immunity[1] with respect to nuisance claims.  We hold that the City is immune from liability for the conduct alleged here, because

---

[1] Although the trial court and the Court of Appeals used the term "sovereign immunity" to describe the City's immunity, we will generally use the term "municipal immunity" to refer to the governmental immunity afforded specifically to cities.

municipalities have never faced liability for a nuisance claim based on alleged conduct related to property they neither own nor control, and nothing in our Constitution alters that principle. Accordingly, we affirm.

Viewing the evidence in favor of the Gattos as the parties opposing summary judgment, the Court of Appeals summarized the relevant facts as follows:

> [O]n the evening of August 27, 2014, and early morning hours of August 28, 2014, eighteen-year-old Michael, an incoming freshman at Georgia Southern University, was at Rude Rudy's, a bar located in University Plaza, drinking with friends. In addition to Rude Rudy's, University Plaza was home to several other businesses that served alcohol, including Retrievers, Rusty's Tavern, and Rum Runners, and was within walking distance of the campus of Georgia Southern University. Told by a bartender that Michael was stealing money from the tip jar, Grant James Spencer ("Spencer"), a bouncer at Rude Rudy's, went to remove Michael from the bar. Spencer struck Michael five times in the head/face, until he was limp and unconscious, and then dropped him on the floor of the bar. After Spencer heard Michael's head hit the floor of the bar, he dragged him outside and left him. Michael was discovered by emergency personnel and airlifted to a hospital in Savannah, where he died on the afternoon of August 28, 2014. Spencer pled guilty to voluntary manslaughter, and was sentenced to 20 years in prison.

*Gatto*, 353 Ga. App. at 178-179 (footnotes omitted). It is undisputed that, at the time of the altercation leading to Michael's death, Rude Rudy's was a privately owned business operating out of retail premises leased from a separate, privately owned corporation. As such, the City had no ownership interest in Rude Rudy's or in any of the property comprising University Plaza.

Nonetheless, based on evidence that the establishments in University Plaza routinely admitted and served alcohol to underage patrons, that violence in the Plaza was common, and that the City had knowingly failed to address these issues, the Gattos asserted that the City and Starling had acted negligently and that the City was maintaining a nuisance, which proximately caused Michael's death. Specifically, the Gattos alleged that Starling had negligently breached a ministerial duty to set due process hearings upon her receipt of notices of ordinance violations by University Plaza establishments; that the City was vicariously liable for these breaches by Starling; that the City's renewal of business and alcohol

3

licenses for Plaza establishments without regard to the pattern of illegal and dangerous activities at the Plaza constituted a breach of its duty of ordinary care; and that the defendants' history of acts and omissions in allowing the Plaza's establishments to remain in operation despite the dangerous pattern of unlawful activities at the Plaza constituted a continuing nuisance.

On the defendants' motion, the trial court granted summary judgment, holding that the claims against the City and Starling were barred by sovereign immunity and, alternatively, that the causal chain between the defendants' acts and Michael's injuries and death was broken by intervening criminal acts of Michael and Spencer. On appeal, the Court of Appeals, in pertinent part, affirmed the trial court's holding that the Gattos' claims against the City were barred by sovereign immunity. See *Gatto*, 353 Ga. App. at 183 (1).[2] As to this issue, the Court of Appeals rejected the Gattos'

---

[2] The Court of Appeals also held that the City had not waived its sovereign immunity by its purchase of liability insurance. See *Gatto*, 353 Ga. App. at 184-185 (2). We did not grant certiorari to review this issue and express no opinion on it here. We likewise express no opinion on the Court of

4

contention that the City's conduct here fell within a so-called "nuisance exception" to sovereign immunity. See *City of Thomasville v. Shank*, 263 Ga. 624, 625 (1) (437 SE2d 306) (1993) (explaining that "a municipality is liable for creating or maintaining a nuisance which constitutes either a danger to life and health or a taking of property"). This Court granted certiorari to address that holding.

1. Municipalities performing their governmental functions have long been afforded immunity from civil liability akin to the immunity afforded to the State. As early as 1880, this Court held that municipalities enjoyed "the same immunity" as the State in their performance of "acts which are legislative or judicial in their nature," on the ground that such acts "are deemed to be but the exercise of a part of the state's power." *Rivers v. City Council of Augusta*, 65 Ga. 376, 378 (1880); see also *Mayor and Aldermen of City of Savannah v. Jordan*, 142 Ga. 409, 409 (83 SE 109) (1914) (a

Appeals' holding that the trial court erred in sua sponte granting summary judgment on the Gattos' negligence claim against Starling based on sovereign immunity. See id. at 186-187 (4).

municipality is exempt from liability where it "undertakes to perform for the [s]tate duties which the [s]tate itself might perform"). Though originating in the common law, the doctrine of municipal immunity now enjoys constitutional status. See Ga. Const. of 1983, Art. IX, Sec. II, Par. IX (recognizing "the immunity of counties, municipalities, and school districts"); see also OCGA § 36-33-1 (a) (citing this constitutional provision and declaring municipal immunity to be "the public policy of the State of Georgia"); *City of Atlanta v. Mitcham*, 296 Ga. 576, 577 (1) (769 SE2d 320) (2015) (discussing constitutional basis for municipal immunity).[3]

---

[3] Our precedent used to hold that municipal immunity was additionally grounded in Article I, Section II, Paragraph IX of our Constitution, which confers sovereign immunity upon "the state and all of its departments and agencies." See *Hiers v. City of Barwick*, 262 Ga. 129, 131 (2) (414 SE2d 647) (1992) (holding that the 1983 predecessor to current Article I, Section II, Paragraph IX applied to municipalities); see also *Lathrop v. Deal*, 301 Ga. 408, 421-422 (II) (B) (801 SE2d 867) (2017) (citing *Hiers* in noting that sovereign immunity under the 1983 version of Article I, Section II, Paragraph IX was construed "to extend not only to the State itself, but also . . . to municipalities" (citations omitted)). However, we have held squarely that the current version of Article I, Section II, Paragraph IX does not apply to municipalities. See *City of Thomaston v. Bridges*, 264 Ga. 4, 7 (439 SE2d 906) (1994) ("[W]e conclude that municipalities do not come within the ambit of the 1991 amendment [to Article I, Section II, Paragraph IX].").

Under our current Constitution, municipal immunity may be waived only by the General Assembly. See Ga. Const. of 1983, Art. IX, Sec. II, Par. IX ("The General Assembly may waive the immunity of counties, municipalities, and school districts by law.").

With regard to the operation of municipal immunity, Georgia courts have traditionally distinguished "governmental" acts, as to which such immunity applies, from acts that are "ministerial," as to which it does not. See, e.g., *Cornelisen v. City of Atlanta*, 146 Ga. 416, 416-417 (1) (91 SE 415) (1917); *Rivers*, 65 Ga. at 378-379. This distinction is codified as follows:

> Municipal corporations shall not be liable for failure to perform or for errors in performing their legislative or judicial powers. For neglect to perform or improper or unskillful performance of their ministerial duties, they shall be liable.

OCGA § 36-33-1 (b); see also *Mitcham*, 296 Ga. at 577-578 (1) ("[M]unicipal corporations are immune from liability for acts taken in performance of a governmental function but may be liable for the negligent performance of their ministerial duties."). In this context, "governmental" functions are those that are "intended for the benefit

7

of the public at large," while "ministerial" functions are those

> involving the exercise of some private franchise, or some franchise . . . exercise[d] for the private profit or convenience of the [municipal] corporation or for the convenience of its citizens alone, in which the general public has no interest.

*Mitcham*, 296 Ga. at 578 (2) (citation and punctuation omitted); see also *Cornelisen*, 146 Ga. at 416.  Compare, e.g., *Jordan*, 142 Ga. at 409  (public sanitation is a governmental function); *Calloway v. City of Warner Robins*, 336 Ga. App. 714, 715 (1) (a) (783 SE2d 175) (2016) (issuance of a business license is a governmental function), with, e.g., *City Council of Augusta v. Owens*, 111 Ga. 464, 477 (7) (36 SE 830) (1900) (operation of city-owned rock quarry is a ministerial function).[4]  Thus, where a municipality performs the functions of a

---

[4] Somewhat incongruously, Georgia courts have long held that the duty to maintain streets and sidewalks free from obstructions and other dangers is a *ministerial* duty.  See *Mayor and Council of Dalton v. Wilson*, 118 Ga. 100, 103 (44 SE 830) (1903) (noting "the well-established rule in this [s]tate, that a municipal corporation is bound to keep its streets and sidewalks in a reasonably safe condition, and that the failure to perform this duty constitutes a breach of a *ministerial* duty") (emphasis added); *Mayor and Aldermen of the City of Savannah v. Herrera*, 343 Ga. App. 424, 428 (1) (808 SE2d 416) (2017) (noting that "the duty . . . to maintain city streets in a reasonably safe condition for travel" has been recognized as a ministerial duty "for more than a century").

sovereign, it enjoys immunity for injuries resulting from the improper or negligent performance, or the failure to perform, those functions.  See *Mitcham*, 296 Ga. at 579 (2).[5]

2.  Even in the exercise of its governmental functions, however, a municipality does not enjoy immunity from *all* liability.  This Court has held that, although protected from liability as to negligence actions,

> [a] municipality[,] like any other individual or private corporation[,] may be liable for damages it causes to a third party from *the operation or maintenance of a nuisance*, irrespective of whether it is exercising a governmental or ministerial function.  This exception to sovereign immunity is based on the principle that a municipal corporation can not, under the guise of performing a governmental function, create a nuisance dangerous to life and health or take or damage private property for public purpose, without just and adequate compensation being first paid.

*Shank*, 263 Ga. at 624-625 (1) (citations and punctuation omitted; emphasis added).  Though denominated an "exception" to sovereign

---

[5] The General Assembly has provided for a limited waiver of municipal immunity, in certain contexts, where a municipality has purchased liability insurance, see OCGA § 36-33-1 (a), but this waiver does not bear on the issue before us here.  See footnote 2 above.

9

immunity in *Shank* and some other cases, see, e.g., *Atkinson v. City of Atlanta*, 325 Ga. App. 70, 70 (752 SE2d 130) (2013) ("[A]s an exception to its immunity, a municipality is liable for damages resulting from operating or maintaining a nuisance."), the principle that municipalities may be liable for creating or maintaining a nuisance is actually "not an exception at all, but instead, a proper recognition that the Constitution itself requires just compensation for takings and cannot, therefore, be understood to afford immunity" for such conduct. *Ga. Dept. of Nat. Resources v. Center for a Sustainable Coast*, 294 Ga. 593, 600 (2) (755 SE2d 184) (2014). See also Ga. Const. of 1983, Art. I, Sec. III, Par. I (a) ("Except as otherwise provided in this Paragraph, private property shall not be taken or damaged for public purposes without just and adequate compensation being first paid."); *Long v. City of Elberton*, 109 Ga. 28, 29-30 (34 SE 333) (1899) (noting that plaintiff's municipal nuisance claim was rooted in the Georgia Constitution's takings clause). As we made clear in *Sustainable Coast*, because only the General Assembly has the authority to enact a waiver of sovereign

immunity, judge-made "exceptions" are unauthorized and have no validity. *Sustainable Coast*, 294 Ga. at 599-600 (2). Thus, the moniker "nuisance exception" is a misnomer, and it is more apt to refer to the "nuisance doctrine" when evaluating whether municipal liability may be imposed in a given case.

In applying the nuisance doctrine, the challenge is "determining what conduct or act on the part of the municipality will result in the creation or maintenance of a nuisance, as opposed to an action in negligence." *Hibbs v. City of Riverdale*, 267 Ga. 337, 338 (478 SE2d 121) (1996). See also *City of Bowman v. Gunnells*, 243 Ga. 809, 810-811 (2) (256 SE2d 782) (1979) ("Neither this court, nor any other court to our knowledge, has been able to give a precise legal definition of nuisance that would apply to all situations."). Perhaps the most common municipal nuisance scenario is that involving damage to property caused by the construction or maintenance of municipal sewer and drainage systems. See R. Perry Sentell, Jr., The Law of Municipal Tort Liability in Georgia, 117 (4th ed. 1988) ("Municipal Tort Liability") (observing that the

11

municipal nuisance doctrine "has received its greatest application" in the sewer and drainage context). See also, e.g., *City of Columbus v. Myszka*, 246 Ga. 571, 571-572 (1) (272 SE2d 302) (1980) (affirming nuisance judgment against city for damage to property caused by leaking municipal sewer and insufficient drainage system); *Bass Canning Co. v. MacDougald Constr. Co.*, 174 Ga. 222, 227 (162 SE 687) (1932) (city could be held liable for nuisance damage caused by faulty municipal drainage system); *Langley v. City Council of Augusta*, 118 Ga. 590, 592-593 (45 SE 486) (1903) (city could be held liable in nuisance for damage caused by overflow from drainage ditch); *Reid v. City of Atlanta*, 73 Ga. 523, 524-525 (1884) (city could be held liable in nuisance for damage caused by failure to maintain sewer). Municipalities have also been held subject to liability in nuisance for injuries resulting from the construction or operation of other types of physical structures. See, e.g., *Delta Air Corp. v. Kersey*, 193 Ga. 862, 871-872 (3) (20 SE2d 245) (1942) (city could be held liable for constructing and operating an airport in such a way to endanger the life and health of adjoining landowners); *Mayor and*

*Council of Washington v. Harris*, 144 Ga. 102, 103 (86 SE 220) (1915) (city could be held liable in connection with operation of power plant city constructed on lot adjacent to plaintiff's property); *Bentley v. City of Atlanta*, 92 Ga. 623, 628 (18 SE 1013) (1893) (city could be held liable in connection with its maintenance of a bridge adjacent to plaintiff's property).

Traditionally, a municipality's liability in nuisance was limited to situations where the alleged injury related to the physical condition of the plaintiff's property or the plaintiff's use and enjoyment thereof. See, e.g., *Bass Canning Co.*, 174 Ga. at 227 (city may be liable for a nuisance "where the effect of the nuisance is specially injurious to an individual by reason of its proximity to his home"); *Stanley v. City of Macon*, 95 Ga. App. 108, 112 (2) (b) (97 SE2d 330) (1957) (to recover against city for nuisance, plaintiff must show that the condition of which he complains "is injurious by reason of its relationship to his home or property"). Thus, in the sewer and drainage cases, the plaintiffs were owners or occupiers of land that was affected by the sewer or drainage systems owned,

13

constructed, or maintained by the defendant cities. See, e.g., *Myszka*, 246 Ga. at 571-572 (1); *Bass Canning Co.*, 174 Ga. at 222; *Langley*, 118 Ga. at 592-593. So, too, with respect to cases involving airports, power plants, and bridges. See *Delta Air Corp.*, 193 Ga. at 871-872 (3); *Harris*, 144 Ga. at 102; *Bentley*, 92 Ga. at 623. This limitation reflected the municipal nuisance doctrine's roots in our Constitution's Takings Clause. See, e.g., *Delta Air Corp.*, 193 Ga. at 870 (3) (municipality cannot create nuisance or damage private property "for public purposes, without just and adequate compensation being first paid"); *Long*, 109 Ga. at 29-30 (noting that the plaintiff's municipal nuisance claim was based on "the provision of [the] constitution which declares that private property shall not be taken or damaged for public purposes without just and adequate compensation being first paid" (emphasis omitted)).

This limitation on the nuisance doctrine was, however, apparently abandoned in the case of *Town of Fort Oglethorpe v. Phillips*, 224 Ga. 834 (165 SE2d 141) (1968), which one commentator has described as "legendary" because of its expansive effect on the

14

municipal nuisance doctrine.  See Sentell, Municipal Tort Liability, at 125.  In *Phillips*, this Court ruled on the sufficiency of a complaint alleging that the municipality had maintained a nuisance by knowingly failing to repair a malfunctioning traffic light — for more than two weeks and despite its knowledge of six accidents at the affected intersection — which allegedly caused a collision that injured the plaintiff's ward.  *Phillips*, 224 Ga. at 838.  We concluded that the complaint should have survived a general demurrer because it "state[d] facts sufficient to show the active operation and maintenance of a dangerous condition and knowingly allowing such condition to continue to the injury of the plaintiff."  Id.  By extending the nuisance doctrine to include personal injuries beyond those tied to the plaintiff's property, *Phillips* enlarged the scope of municipalities' potential liability in nuisance.  See Sentell, Municipal Tort Liability, at 125; see also *Mayor and Aldermen of the City of Savannah v. Palmerio*, 242 Ga. 419, 428 (249 SE2d 419) (1978) (Hall, J., concurring specially) (opining that this Court should re-examine *Phillips* because it "'appears to open a Pandora's box for

15

the nuisance concept in municipal liability'").[6]

Since *Phillips*, this Court has attempted to elucidate parameters for this more expansive notion of municipal liability. In *Palmerio*, in connection with our consideration of jury instructions on the subject, we provided the following guidance:

> To be held liable for maintenance of a nuisance, the municipality must be chargeable with performing a continuous or regularly repetitious act, or creating a continuous or regularly repetitious condition, which causes the hurt, inconvenience or injury; the municipality must have knowledge or be chargeable with notice of the dangerous condition; and, if the municipality did not perform an act creating the dangerous condition . . . the failure of the municipality to rectify the dangerous condition must be in violation of a duty to act.

242 Ga. at 427 (3) (citations omitted). Similarly, in *City of Bowman v. Gunnells*, 243 Ga. 809 (256 SE2d 782) (1979), we set forth three

---

[6] Some of us have doubts about the legal foundations of *Phillips*, which also divorced municipal nuisance liability from its basis in our Constitution's Takings Clause. How *Phillips* relates to the subsequent constitutionalization of sovereign immunity raises complicated questions. See *Bd. of Commrs. of Lowndes County v. Mayor and Council of the City of Valdosta*, 309 Ga. 899, 902-904 (2) (a) (848 SE2d 857) (2020) (discussing effect of 1974 constitutionalization of sovereign immunity on the authority of courts to modify the doctrine). However, we need not address these doubts and questions to resolve the case before us, because, as we will explain, the Gattos' nuisance claim against the City goes beyond even *Phillips*' expansion of the nuisance doctrine.

16

"guidelines" for identifying an actionable municipal nuisance: (1) "[t]he defect or degree of misfeasance must be to such a degree as would exceed the concept of mere negligence"; (2) "[t]he act must be of some duration"; and (3) the municipality failed to act "within a reasonable time after knowledge of the defect or dangerous condition." Id. at 811 (2).

While not explicitly stated, implicit in all of these formulations is the notion that a municipality's liability is grounded in its exercise of some degree of dominion or control over the property giving rise to the alleged nuisance, whether by virtue of ownership or the assumption of responsibility for its maintenance or operation. Thus, as to a nuisance claim against a city based on a subdivision's inadequate drainage system, we have held that liability could lie only if "the City's actions in regard to the storm drainage system constituted such exercise of control or acceptance so as to establish a duty on the part of the City to adequately maintain it." *Hibbs*, 267 Ga. at 339. In another drainage case, we held similarly that "in order to become responsible, a municipality must actively take

17

control over the property in question or accept a dedication of that property." *City of Atlanta v. Kleber*, 285 Ga. 413, 419 (3) (677 SE2d 134) (2009). See also *Merlino v. City of Atlanta*, 283 Ga. 186, 189 (2) (657 SE2d 859) (2008) (city entitled to summary judgment on nuisance claim where "there [was] no evidence that the City owned the [source of the nuisance] or exercised direct dominion or control over it"); *City of Atlanta v. Demita*, 329 Ga. App. 33, 37 (1) (762 SE2d 436) (2014) (reversing jury verdict for plaintiff on the ground that there was "no evidence that the City negligently constructed or maintained a sewer or drainage system under its control which caused the repeated flooding of [the plaintiff's] property").

A corollary to the principle that a municipality must exercise some control over property in order to be subject to liability for harm it has caused is the longstanding rule that municipalities will not be held liable for the mere failure to abate a nuisance maintained on or with respect to another's property. See, e.g., *Wilson*, 118 Ga. at 103 ("[T]here can be no action for damages [against a municipality] where the nuisance is maintained by a private individual upon

18

private property."); *Head v. City Council of Augusta*, 46 Ga. App. 705, 705 (169 SE 48) (1933) ("A municipality is not liable for injuries resulting from a nuisance maintained by individuals on their own property, notwithstanding such a nuisance might be abated or removed[.]"). And it is clear that *Phillips* did not alter this rule.

In *Hancock v. City of Dalton*, 131 Ga. App. 178 (205 SE2d 470) (1974), the Court of Appeals, expressly distinguishing *Phillips*, held that the city could not be held liable for its failure to enforce an ordinance requiring the erection of railroad crossing signals by railroads. See *Hancock*, 131 Ga. App. at 180-181. *Phillips* was different, the Court of Appeals explained, because there, the source of the nuisance was a traffic light operated by the municipality, as opposed to the situation presented in *Hancock*, where the alleged nuisance arose from the *absence* of traffic signals. See id. Because there was no property over which the city had undertaken to exercise control, there was no basis for holding the city liable in nuisance. The same result obtained in *Bowen v. Little*, 139 Ga. App. 176 (228 SE2d 159) (1976), in which the Court of Appeals affirmed

the dismissal of the city from an action alleging nuisance for its failure to install a traffic light at a particular intersection. See id. Citing *Bowen* and *Hancock* with approval, we have applied the same principle and noted "a clear line . . . between a discretionary nonfeasance and the negligent maintenance of *something erected by the city*, in its discretion in such manner as to create a dangerous nuisance[.]" *Tamas v. Columbus*, 244 Ga. 200, 201-202 (259 SE2d 457) (1979) (citation and punctuation omitted; emphasis added). Stated simply, where there is no property over which the municipality exercises dominion or control, there can be no municipal nuisance liability.

Thus, while *Phillips* and cases following it may have expanded municipal nuisance liability beyond circumstances where the injury bears some connection to the plaintiff's property, no case has expanded the realm of municipal liability to cover injuries caused by property over which the municipality does not exercise dominion or control in some manner. The Gattos have cited no Georgia case, and we have found none, in which a municipality has been subjected to

liability in nuisance for acts originating on, or the failure to act with regard to, property the municipality neither owned nor controlled in some manner at the time of the alleged injury. See *City of Albany v. Stanford*, 347 Ga. App. 95, 103 n.12 (815 SE2d 322) (2018) (Gobeil, J., concurring specially) ("There is no case law indicating that a municipality may be held liable for creating or maintaining a nuisance on private property held by another.").[7]

3. This Court now has no authority to alter these outer limits of municipal nuisance liability. Once the doctrine of sovereign immunity attained constitutional status in 1974, "courts no longer had the authority to abrogate or modify the doctrine." *Sustainable Coast,* 294 Ga. at 597 (2). As we recently noted, the

---

[7] In addition to *Phillips*, the Gattos rely heavily on a trio of other cases to support their claims. In none of these cases, however, was a municipality subjected to liability for injuries caused by property owned or controlled exclusively by another party. See *Myszka*, 246 Ga. at 571-572 (1) (liability imposed in part based on leakage from city's sewerage system); *Mayor and Council of Waycross v. Houk*, 113 Ga. 963, 966 (2) (39 SE 577) (1901) (affirming the grant of an injunction against city for its role in maintaining a sewer system that discharged near the plaintiff's property); *City of Gainesville v. Pritchett*, 129 Ga. App. 475, 476 (1) (199 SE2d 889) (1973) (city could be held liable for injuries resulting when plaintiffs collided with a ski-jump barge placed in the channel of a lake in connection with a city-sponsored holiday event).

constitutionalization of the sovereign immunity doctrine preserved the scope of the doctrine as it existed at common law and rendered it unmodifiable by the courts. See *Bd. of Commrs. of Lowndes County v. Mayor and Council of the City of Valdosta*, 309 Ga. 899, 904 (2) (a), (b) & n.2 (848 SE2d 857) (2020). Now, absent a waiver by the Georgia Constitution itself, only the General Assembly has the authority to abrogate or modify the scope of sovereign immunity. See Ga. Const. of 1983, Art. IX, Sec. II, Par. IX; see also Art. I, Sec. II, Par. IX (a), (e). Thus, unless and until the General Assembly sees fit to reduce the scope of municipalities' immunity and thereby allow liability for claims of the type the Gattos have asserted, we are bound to enforce the limits of liability that currently exist.

4. Here, the Gattos seek to impose liability on the City for failing to enforce its ordinances or take other steps to compel private businesses operating on private property to comply with their legal obligations. It is undisputed that the altercation between Michael and Spencer occurred on private property that was controlled by a privately owned business. Even to the extent the environment at

22

University Plaza may accurately be characterized as having constituted a nuisance — a matter on which we express no opinion — the law is clear that the City cannot be held liable for its discretionary decision not to act to abate a nuisance caused by a private party and maintained on private property. Accordingly, we conclude that the City was correctly held to be immune from liability as to the Gattos' nuisance claim.

*Judgment affirmed. All the Justices concur, except Ellington, J., who concurs in the judgment only, and Peterson, J., disqualified.*

Decided June 21, 2021 — Reconsideration dismissed July 15, 2021.

Certiorari to the Court of Appeals of Georgia — 353 Ga. App. 178.

*Bondurant, Mixson & Elmore, Michael B. Terry, Naveen Ramachandrappa, Amanda K. Seals; Deitch & Rogers, Gilbert H. Deitch, Andrew T. Rogers, Kara E. Phillips, William M. D'Antignac; G. Brian Spears; Foy & Associates, Charles E. Johnson III*, for appellants.

*Elarbee, Thompson, Sapp & Wilson, Richard R. Gignilliat, John C. Stivarius, Jr., Tracy L. Glanton*, for appellees.

*Craig T. Jones; Lewis Brisbois Bisgaard & Smith, Seth M. Friedman; Rusi C. Patel, Emily C. Hirst*, amici curiae.