**FOURTH DIVISION**
**DILLARD, P. J.,**
**MERCIER and LAND, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

July 14, 2025

# In the Court of Appeals of Georgia

A25A0848. DETHOMAS INVESTMENTS, LLC et al. v. LMRK PROPCO, LLC.

A25A0849. CITY OF LAWRENCEVILLE et al. v. LMRK PROPCO, LLC.

MERCIER, Judge.

LMRK PropCo, LLC ("LMRK") sued DeThomas Investments, LLC ("DeThomas Investments"), Ronnie DeThomas, the City of Lawrenceville ("the City"), and the Development Authority of Lawrenceville ("the Authority"), raising multiple claims relating to the alleged destruction of a billboard easement in Lawrenceville. The trial court denied the defendants' motions to dismiss, and we granted their applications for interlocutory appeal. For reasons that follow, we affirm the trial court's judgment in Case No. A25A0848, but reverse the judgment in Case No. A25A0849.

1. In Case No. A25A0848, DeThomas Investments and Ronnie DeThomas (collectively, "the DeThomas defendants") argue that the trial court erred in denying their motion to dismiss for failure to state a claim upon which relief can be granted. We disagree.

> A motion to dismiss for failure to state a claim
>
> will not be sustained unless (1) the allegations of the complaint disclose with certainty that the claimant would not be entitled to relief under any state of provable facts asserted in support thereof; and (2) the movant establishes that the claimant could not possibly introduce evidence within the framework of the complaint sufficient to warrant a grant of the relief sought.

*Siavage v. Gandy*, 350 Ga. App. 562, 564 (829 SE2d 787) (2019) (citation and punctuation omitted). We review the trial court's ruling on such motion de novo, "accept[ing] the allegations of fact that appear in the complaint and view[ing] those allegations in the light most favorable to the plaintiff." Id. (citation and punctuation omitted).

Construed in this manner, the complaint alleges that in 2011, The Lamar Companies ("Lamar") entered into a lease with Don Kim to construct and maintain

a billboard on property owned by Kim along Buford Drive in Lawrenceville ("the Buford property"). In October 2014, Kim and his co-owner quitclaimed the Buford property to West End Enterprises, Inc. ("West End"), and a few days later, West End granted Landmark Infrastructure Holding Company LLC ("LIHC") an exclusive, 99-year billboard easement over the portion of the Buford property on which the Lamar billboard sat.[1] West End also sold, transferred, and assigned to LIHC the billboard lease agreement with Lamar. After several other assignments, the easement and Lamar lease agreement were assigned to LMRK in 2017.

In November 2021, the Lawrenceville City Manager submitted to the City Council an intergovernmental agreement between the City and the Authority relating to a 1.22 acre tract of land owned by West End consisting of the Buford property and an adjacent parcel located on Reynolds Road known as "the Reynolds property." In connection with the intergovernmental agreement, the City Council was advised that the City had entered into a contract with West End to purchase both properties, which would be transferred to the Authority for redevelopment following the acquisition. Both the City Council and the Authority approved the intergovernmental agreement.

---

[1] West End also granted LIHC a corresponding access easement. For ease of discussion, references to the billboard easement also include the access easement.

On January 27, 2022, the Authority further approved an agreement to sell both parcels to DeThomas Investments. At that point, however, West End still owned the Buford and Reynolds properties.

One month later, on February 28, 2022, DeThomas Investments submitted an application to the Lawrenceville Planning Commission to rezone .657 acres of land ("the DeThomas property") that it owned next to West End's properties, seeking, in particular, a special use permit allowing installation of a new billboard with an electronic message center. In its letter of intent, DeThomas Investments stated that it requested rezoning "to allow the relocation of . . . [a]n existing non-conforming sign [that] is 'grandfathered' at a location along . . . Ga. Hwy. 20," which is also known as Buford Drive.

Although the face of DeThomas Investments' rezoning application referenced the .657 acres that it owned, a document within the application identified the "subject parcels" as including the Buford and Reynolds properties. The City's Rezoning and Special Use Report developed for the application also stated that DeThomas Investments sought rezoning of 1.87 acres, which encompassed not only the DeThomas property, but the Buford and Reynolds parcels, as well. Other county

documents listed DeThomas Investments and the City as the owners of all three parcels. And the paperwork identified the billboard DeThomas Investments sought to relocate as the Lamar billboard situated on LMRK's Buford property easement.

West End still owned the Buford and Reynolds properties at the time, and neither West End nor LMRK had applied for rezoning or a special use permit. Nevertheless, the special use permit was approved in April 2022 for installation of a new billboard on the DeThomas property, with the condition that the "[e]xisting Billboard and Structure shall be demolished and removed from the site[.]" Following the zoning action, Lamar removed its billboard from the Buford property and later erected a new billboard on the DeThomas property. Lamar also gave notice on May 9, 2022, that it was terminating its billboard lease with LMRK. According to the complaint, the zoning action left LMRK unable to "erect a billboard on its Easement[], thereby destroying the very purpose of [its] Easement[.]"

On May 16, 2022, West End completed the sale of its Buford and Reynolds properties, transferring both parcels to the City. The conveyance of the Buford property, however, was subject to LMRK's easement. Approximately one year later, counsel for the Authority wrote to LMRK, stating that the billboard on the Buford

property had been removed, that Lamar had terminated the billboard lease, and that "it is our understanding that [LMRK] no longer uses the easement[.]" Noting that the City had acquired the Buford property for redevelopment, counsel requested that LMRK "terminate the former Easement for the benefit of the City and its gateway development." Counsel included a proposed termination document, which stated that LMRK had "caused the billboard sign described in the Lease and Easement to be relocated to a new location and a new Lease to be signed for the new location[.]"

LMRK did not execute the termination document, instead filing suit against the DeThomas defendants, as well as the City and the Authority (collectively, "the City defendants").[2] As to the DeThomas defendants, LMRK alleged claims for fraud, negligent misrepresentation, fraudulent concealment, civil conspiracy, tortious interference with LMRK's contractual and business relations with Lamar, nuisance, litigation expenses under OCGA § 13-6-11,[3] and punitive damages. The DeThomas

---

[2] The complaint does not assert claims against any City or Authority official or employee.

[3] Pursuant to OCGA § 13-6-11: "[W]here the plaintiff has specially pleaded and has made prayer [for litigation expenses] and where the defendant has acted in bad faith, has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense, the jury may allow them."

defendants moved to dismiss all of these allegations, asserting that each failed to state a claim upon which relief could be granted. The trial court denied the motion, and this appeal followed.

(a) *Fraud*. A fraud claim has five elements: "(1) a false representation or omission of a material fact; (2) scienter; (3) intention to induce the party claiming fraud to act or refrain from acting; (4) justifiable reliance; and (5) damages." *UWork.com v. Paragon Technologies*, 321 Ga. App. 584, 598 (5) (740 SE2d 887) (2013) (citation and punctuation omitted). In most cases, the misrepresentation underlying the fraud must be "made *to* the defrauded party, and relied upon *by* the defrauded party." Id. (citation and punctuation omitted; emphasis in original). A misrepresentation to a third party, however, can support a fraud claim when it "induce[s] the third party to act in some manner on which the defrauded party relies." Id. at 599 (5) (citation, punctuation, and emphasis omitted).

The complaint alleges that the DeThomas defendants falsely represented to the planning commission that DeThomas Investments owned the Buford property and held an interest in the billboard located on LMRK's easement. According to the complaint, the planning commission relied on these misrepresentations, which

induced the commission to rezone the Buford property, damaging LMRK's easement and billboard lease interest. Noting LMRK's focus on statements made to the third party planning commission, the DeThomas defendants argue that such statements cannot support the fraud claim.

Generally, "for a misrepresentation to a third party to constitute actionable fraud . . . , the defrauded party must be induced to act or forbear from acting as a result of the misrepresentation made to the third party." *UWork.com*, 321 Ga. App. at 599 (5). The complaint does not allege that misrepresentations to the planning commission induced LMRK to act or refrain from acting. But where a third party "is entrusted with discretion in caring for plaintiff's interests, a misrepresentation to that [third party] may be the basis for a fraud action where the [third party] in reasonably relying upon the misrepresentation acts to harm plaintiff's interests." *Potts v. Uap-Ga Ag Chem*, 256 Ga. App. 153, 156 (1) (567 SE2d 316) (2002).

LMRK contends that it relied on the planning commission "to comply with the law relating to [its] rights in the Easement[], the Lease, and the Billboard." Construing the complaint favorably to LMRK, we agree with the trial court that the fraud claim sufficiently states a claim for fraud based on misrepresentations to a third

8

party zoning authority vested with discretion to protect competing property interests. See *Potts*, 256 Ga. App. at 156 (1). Compare *UWork.com*, 321 Ga. App. at 600 (5) (distinguishing *Potts* and finding that misrepresentations made to third parties who were "involved in a series of arms-length commercial transactions" with the claimant cannot support a fraud claim).

Further challenging the fraud allegations, the DeThomas defendants argue that (1) they made no misrepresentations to the planning commission, and (2) even if they did, the misrepresentations did not induce the commission to rezone the Buford property because the planning commission only issues zoning recommendations, while the City Council makes the final zoning decision. Again, however, we must view the allegations in the complaint most favorably to LMRK. And we cannot conclude — at this point in the proceedings, when the inner-workings of this zoning decision have not yet been established — that LMRK will not be able to "possibly introduce evidence within the framework of the complaint sufficient to warrant a grant of the relief sought." *Siavage*, 350 Ga. App. at 564. Accordingly, the trial court properly denied the motion to dismiss the fraud claim. See *TMX Finance v. Goldsmith*, 352 Ga. App. 190, 203 (4) (833 SE2d 317) (2019) ("[A] complaint alleging fraud should not

be dismissed for failure to state a claim unless it appears beyond a doubt that the pleader can prove no set of facts in support of his claim which would entitle him to relief.") (citation and punctuation omitted).

(b) *Negligent misrepresentation*. Under Georgia law, "[t]he only real distinction between negligent misrepresentation and fraud is the absence of the element of knowledge of the falsity of the information disclosed." *UWork.com*, 321 Ga. App. at 600 (6) (citation and punctuation omitted). LMRK's negligent misrepresentation claim mirrors its fraud claim, albeit without the allegation of scienter. For the same reasons discussed with respect to the fraud claim, these allegations are sufficient to state a claim for negligent misrepresentation.

(c) *Fraudulent concealment.* Pursuant to OCGA § 23-2-53, "[s]uppression of a material fact which a party is under an obligation to communicate constitutes fraud." On appeal, the DeThomas defendants argue that the complaint does not assert grounds for finding an "obligation to communicate" in this case, particularly given the lack of any confidential relationship between the DeThomas defendants and LMRK. But "[t]he obligation to communicate may arise from the confidential relations of the parties *or* from the particular circumstances of the case." Id. (emphasis

supplied). The complaint alleges that, in their effort to rezone the Buford property, the DeThomas defendants concealed from the planning commission information about the Buford property's true owner and the circumstances surrounding Lamar's existing billboard, despite requirements that the rezoning application list the owners of all parcels at issue. The complaint further alleges that the DeThomas defendants had an obligation to communicate the true facts to the planning commission.

LMRK may be able to present evidence that the DeThomas defendants concealed information they were obligated to disclose to the planning commission. And although the DeThomas defendants suggest that a fraudulent concealment claim cannot be based on information hidden from a third party, we have already rejected that argument with respect to the other fraud-based allegations, and we see no basis for applying a different rule in this context. See *Hanlon v. Thornton*, 218 Ga. App. 500, 502 (2) (462 SE2d 154) (1995) ("In a claim for fraudulent concealment, a plaintiff must prove the same five elements of a fraud claim."). The trial court, therefore, properly denied the motion to dismiss as to this claim. See *Doe v. Saint Joseph's Catholic Church*, 313 Ga. 558, 568 (2) (b) (870 SE2d 365) (2022) ("at the

11

motion-to-dismiss stage, we cannot rule out the possibility that [the claimant] could introduce evidence" supporting the fraudulent concealment allegation).

(d) *Civil Conspiracy.* The complaint alleges that, through fraudulent conduct, the DeThomas defendants and the City defendants engaged in a civil conspiracy to destroy LMRK's interest in the easement and billboard lease. The DeThomas defendants argue that the trial court should have dismissed this claim because the underlying fraud allegation "fails as a matter of law." As discussed above, however, LMRK has stated a claim for fraud. The DeThomas defendants have not demonstrated error.[4]

(e) *Tortious Interference with Contractual and Business Relations.* Under Georgia law, "parties to a contract have a property right therein with which a third party cannot interfere without legal justification or privilege, and a party injured by another's wrongful interference may seek compensation in tort[.]" *Professional Energy*

---

[4] The DeThomas defendants also question whether the City can be found to have defrauded the planning commission, which is an arm of its own government. To recover for civil conspiracy, however, "a plaintiff must show that two or more persons combined either to do some act which is a tort, or else to do some lawful act by methods which constitute a tort." *TMX Finance*, 352 Ga. App. at 212 (8) (citation and punctuation omitted). Even without the City defendants, LMRK has alleged that two defendants — DeThomas and the DeThomas Investments — conspired to defraud it.

*Mgmt. v. Necaise*, 300 Ga. App. 223, 226 (1) (b) (684 SE2d 374) (2009) (citation and punctuation omitted). A party stating a claim for such interference must allege:

> (1) improper action or wrongful conduct by the defendant without privilege; (2) the defendant acted purposely and with malice with the intent to injure; (3) the defendant induced a breach of contractual obligations or caused a party or third party to discontinue or fail to enter into an anticipated business relationship with the plaintiff; and (4) the defendant's tortious conduct proximately caused damage to the plaintiff.

*Perry Golf Course Dev. v. Housing Auth. of the City of Atlanta*, 294 Ga. App. 387, 390 (3) (670 SE2d 171) (2008) (citation and punctuation omitted). The claimant establishes that a defendant acted "without privilege" by showing that "the defendant was an intermeddler or 'stranger' to the contract or business relationship at issue." *United Sciences v. Kellett*, 368 Ga. App. 690, 695 (890 SE2d 103) (2023).

Here, the complaint alleges the following. The DeThomas defendants had no ownership interest in the Buford property, but knew that LMRK held a billboard easement and an enforceable billboard lease agreement with Lamar. Wrongfully, and without privilege, the DeThomas defendants misrepresented the ownership interest of the Buford property in an improper effort to have the property rezoned. Through that effort, which resulted in issuance of a special use permit requiring that the

13

billboard on LMRK's easement be removed, the DeThomas defendants induced Lamar to cancel its lease with LMRK, destroying the value of the billboard easement and proximately causing damage to LMRK. These allegations state a claim for tortious interference of contractual and business relations. See *Professional Energy Mgmt.*, 300 Ga. App. at 227 (1) (b); *Perry Golf Course Dev.*, 294 Ga. App. at 397 (8) (a).

(f) *Nuisance.* To establish a claim for nuisance, a plaintiff must demonstrate that the defendant "created or maintained a continuous or regularly repeated act or condition on the property, which led to the plaintiff's injury." *Camelot Club Condo. Assn. v. Afari-Opoku*, 340 Ga. App. 618, 628 (2) (b) (798 SE2d 241) (2017) (citation and punctuation omitted). Viewed favorably to LMRK, the complaint alleges that the DeThomas defendants' fraudulent and tortious activity unlawfully created conditions on the Buford property that interfered with LMRK's enjoyment of its billboard easement by, among other things, causing the removal of the existing billboard and prohibiting construction of future billboards. This claim is not, as the DeThomas defendants argue, an end-run around the zoning process. LMRK contends that the DeThomas defendants' tortious and fraudulent conduct created conditions that interfere with its property rights. We cannot conclude that LMRK will not be able to

14

prove facts demonstrating a nuisance. See OCGA § 41-1-1 ("A nuisance is anything that causes hurt, inconvenience, or damage to another and the fact that the act done may otherwise be lawful shall not keep it from being a nuisance."); Restatement (Second) of Torts § 821D (1979) ("A private nuisance is a nontrespassory invasion of another's interest in the private use and enjoyment of land.").

(g) The DeThomas defendants argue that, because LMRK's substantive claims should have been dismissed, its derivative claims for punitive damages and litigation expenses also fail. Given our discussion above, this argument lacks merit.

### Case No. A25A0849

2. LMRK alleges claims against one or both City defendants for the torts of fraud, fraudulent concealment, negligent misrepresentation, tortious interference with contract, and fraud-based civil conspiracy. The City defendants argue that the trial court erred in denying their motion to dismiss on sovereign immunity grounds. As to these claims, we agree.

"Because sovereign immunity is jurisdictional, it requires the plaintiff to prove any waiver thereto and is properly raised as a defense under OCGA § 9-11-12 (b) (1)." *State of Ga. v. Fed. Defenders Program*, 315 Ga. 319, 327 (3) (882 SE2d 257) (2022)

(citation and punctuation omitted). Ultimately, the trial court "must make the determination acting as the trier of fact. Its evaluation rests on where the preponderance of the evidence lies, not necessarily on whether the issue may be decided as a matter of law." *Dept. of Transp. v. Thompson*, 354 Ga. App. 200, 206 (1) (840 SE2d 679) (2020) (citation and punctuation omitted).

Municipalities generally enjoy sovereign immunity from damages-based liability. See OCGA § 36-33-1 (a). Pursuant to this immunity, "[m]unicipal corporations shall not be liable for failure to perform or for errors in performing their legislative or judicial powers." OCGA § 36-33-1 (b). But sovereign immunity has been waived — and the municipality can be held liable — for "neglect to perform or improper or unskillful performance of [its] ministerial duties[.]" Id.; see also Ga. Const. of 1983, Art. IX, § II, Para. IX ("The General Assembly may waive the immunity of . . . municipalities . . . by law."). Construing this provision, we have held that a municipality has "sovereign immunity against claims involving the performance of, or the failure to perform, a governmental function, but may be liable for the [improper] performance of [its] ministerial duties." *Atlanta Metro Leasing v. City of*

*Atlanta*, 353 Ga. App. 785, 789 (1) (839 SE2d 278) (2020) (citation and punctuation omitted). In this context,

> [g]overnmental functions traditionally have been defined as those of a purely public nature, intended for the benefit of the public at large, without pretense of private gain to the municipality. The exemption from liability for governmental functions is placed upon the ground that the service is performed by the corporation in obedience to an act of the legislature, is one in which the corporation has no particular interest and from which it derives no special benefit in its corporate capacity. Ministerial functions, in comparison, are recognized as those involving the exercise of some private franchise, or some franchise conferred upon the municipal corporation by law which it may exercise for the private profit or convenience of the corporation or for the convenience of its citizens alone, in which the general public has no interest.

Id. (citation and punctuation omitted).

As noted by the City defendants, this case arose in the context of a decision to rezone property within the City and issue a special use permit relating to a billboard. Zoning and permitting decisions are governmental functions. See OCGA § 36-66-3 (4) (defining a zoning decision as "final legislative action by a local government"); *Speedway Grading Corp. v. Barrow County Bd. of Commrs.*, 258 Ga. 693, 695 (2) (373 SE2d 205) (1988) (indicating that "a zoning body . . . perform[s] a legislative

17

function"); *Hall County v. Cook Communities*, 368 Ga. App. 536, 541 (890 SE2d 462) (2023) (a zoning authority can also act in a quasi-judicial capacity); *Calloway v. City of Warner Robins*, 336 Ga. App. 714, 715 (1) (a) (783 SE2d 175) (2016) ("[A] municipality's issuance of a permit or license is a governmental function.") (citation and punctuation omitted).

Nevertheless, LMRK argues — and the trial court found — that, through tortious conduct, the City defendants engaged in ministerial functions that push this case outside of sovereign immunity protection. The complaint alleges, for example, that the City falsely represented to the planning commission that it owned the Buford property; that this false representation contributed to a rezoning decision that interfered with LMRK's billboard lease and easement; and that the Authority requested that LMRK terminate its easement to protect the defendants from their wrongful and conspiratorial conduct. According to LMRK, "the corrupt, fraudulent, and conspiratorial acts leading up to and after the zoning and special use permit decisions give rise to LMRK's claims against the City [defendants][.]"

In determining whether a municipal function is governmental or ministerial, however, we must focus "broadly on the nature, purpose, and intended beneficiaries

of the function[.]" *Atlanta Metro Leasing*, 353 Ga. App. at 789 (1) (citation and punctuation omitted). Again, all of the conduct here revolved around a rezoning decision and issuance of a special use permit. Although LMRK contends that the City defendants engaged in such conduct to "enrich themselves," it further connects that conduct to the Authority's effort to redevelop the area. And, according to the intergovernmental agreement relating to the Buford and Reynolds properties, the Authority, an entity "created to develop and promote trade, commerce, industry and employment opportunities for the public good and the general welfare within the City," was allowed to take steps needed to pursue development "in a manner [providing] for the economic redevelopment and revitalization of the area."

Simply put, the City defendants' conduct, even if tortious, involved zoning and permitting activities *or* redevelopment efforts for the public good. We fail to see how such conduct falls outside the scope of governmental functions.[5] See *Atlanta Metro Leasing*, 353 Ga. App. at 790 (1) ("[A]lthough the City received revenue [for the

---

[5] Although the complaint alleges that the City defendants' actions were "ministerial in nature[,]" this allegation "must be treated as mere conclusions of the pleader, no facts being alleged to show that the [C]ity [defendants were] seeking the furtherance of [their] private or pecuniary interests." *Atlanta Metro Leasing*, 353 Ga. App. at 790 (1) (citation and punctuation omitted).

allegedly offending conduct], whether the enterprise turns a profit, or only an incidental profit is not the controlling point; what is significant is the character of the enterprise as 'primarily a source of revenue' rather than being used primarily for the benefit of the public regardless of incidental generation of revenues.") (citation and punctuation omitted). Accordingly, "because there is no evidence of a waiver of the [City defendants'] sovereign immunity in this case," the trial court erred in denying the motion to dismiss LMRK's claims for fraud, fraudulent concealment, negligent misrepresentation, tortious interference with contract, and fraud-based civil conspiracy. *Calloway*, 336 Ga. App. at 716 (1) (a).

3. The remaining substantive claims against one or both City defendants seek damages for nuisance, inverse condemnation, and breach of the written easement agreement. These claims are not subject to sovereign immunity. See *Gatto v. City of Statesboro*, 312 Ga. 164, 168 (2) (860 SE2d 713) (2021) ("[A] municipality, like any other individual or private corporation, may be liable for damages it causes to a third party from the operation or maintenance of a nuisance, irrespective of whether it is exercising a governmental or ministerial function.") (citation, punctuation, and emphasis omitted); *City of Greensboro v. Rowland*, 334 Ga. App. 148, 150 (1) (778 SE2d

20

409) (2015) (municipality did not have sovereign immunity regarding inverse condemnation claim alleging an unlawful taking of property); *Atlanta Metro Leasing*, 353 Ga. App. at 791 (1) ("[M]unicipal immunity is not a valid defense to an action for breach of contract") (citation and punctuation omitted). We must consider, however, whether the trial court properly denied the City defendants' motion to dismiss these allegations for failure to state a claim.

(a) *Nuisance against the City*.[6] As with the DeThomas defendants, the complaint alleges that the City's fraudulent and tortious activity created conditions on the Buford property that interfered with LMRK's enjoyment of its billboard easement. A municipality's liability for nuisance "is grounded in its exercise of some degree of dominion or control over the property giving rise to the alleged nuisance, whether by virtue of ownership or the assumption of responsibility for its maintenance or operation." *Gatto*, 312 Ga. at 171 (2).

Conduct involving rezoning, permit issuance, removal of the billboard from the Buford property, and termination of the Lamar lease occurred before the City had any ownership interest or control over the Buford or Reynolds properties. The only City-

---

[6] The nuisance claim, like the breach of easement contract claim discussed below, are alleged only against the City.

21

based conduct that occurred *after* the City purchased these parcels involved the letter sent by counsel for the Authority requesting that LMRK terminate its easement. With respect to that conduct, LMRK contends only that (1) the letter demonstrates that all defendants conspired to "enrich themselves" by rezoning the property at a time when they had no ownership interest, and (2) through the letter, the Authority sought to protect the defendants from any consequences relating to their conspiratorial and tortious conduct. LMRK makes no claim that the letter interfered with its property rights.

Even construed favorably to LMRK, the complaint does not allege that the City created or maintained a nuisance at a time when it exercised dominion or control over property giving rise to the nuisance. The trial court, therefore, erred in denying the City's motion to dismiss this claim. See *Gatto*, 312 Ga. at 173 (2) ("[W]here there is no property over which the municipality exercises dominion or control, there can be no municipal nuisance liability.").

(b) *Inverse condemnation against the City and the Authority.* "An inverse condemnation claim arises when the governmental entity creates a condition on private property that amounts to a taking without compensation." *Rouse v. City of*

22

*Atlanta*, 353 Ga. App. 542, 548 (2) (c) (839 SE2d 8) (2020) (citation and punctuation omitted), disapproved of on other grounds by *Sumter County. v. Morris*, 318 Ga. 1, 10 (2) (a) n.10 (896 SE2d 571) (2023). Such claim is properly set forth when the municipality

> takes some affirmative action for public purposes causing a nuisance or trespass which, in turn, results in the diminished utility and functionality of a private owner's land. The diminished functionality and utility, in turn, interferes with the owner's use and enjoyment of the land. It is only then that a "taking" for a public purpose occurs which supports a claim for inverse condemnation.

Id. (citation and punctuation omitted).

The complaint alleges that inverse condemnation resulted when the City defendants fraudulently and tortiously interfered with LMRK's property interest. This claim does not allege that the City or the Authority caused a nuisance or trespass. And although the complaint asserts separate nuisance allegations against the City, those allegations fail to state a claim. Accordingly, because LMRK has not stated a claim that a nuisance or trespass created by the City defendants resulted in diminished utility and functionality of its property interest, the City defendants were entitled to dismissal of the inverse condemnation claim. See *City of Tybee Island v. Live Oak*

*Group*, 324 Ga. App. 476, 479 (751 SE2d 123) (2013) (complaint failed to state a claim for inverse condemnation where "there was simply no affirmative act by the City for a public purpose causing a nuisance or trespass on [claimant's] property resulting in diminished utility and functionality of the property").

(c) *Breach of the easement contract against the City.* The complaint alleges that the City became the successor-in-interest to LMRK's easement agreement when it purchased the Buford property. LMRK further claims that the City breached that agreement by interfering with billboard operations on the easement. Again, however the only City-related conduct occurring after the City purchased the property was a letter sent by the Authority, not the City. And even if that letter can be attributed to the City, the complaint contains no allegation that the letter — in itself — interfered with the billboard easement.

On appeal, LMRK argues that the alleged nuisance created by the City continued after the City purchased the Buford property, causing a post-sale breach of the easement agreement. The complaint, however, does not state a claim for nuisance, undermining this argument. And no other allegations assert post-sale tortious conduct by the City. In other words, none of the City-related conduct allegedly giving rise to

the breach of contract claim occurred when the City was a party to the easement agreement. The complaint, therefore, fails to state a claim for breach of that agreement. See *UWork.com*, 321 Ga. App. at 590 (1) ("A breach occurs if a *contracting party* repudiates or renounces liability under the contract; fails to perform the engagement as specified in the contract; or does some act that renders performance impossible.") (emphasis supplied).

4. Given our decisions above, the trial court also erred in failing to dismiss LMRK's derivative claims against the City defendants for litigation expenses and punitive damages. See *Sparra v. Deutsche Bank Nat. Trust Co.*, 336 Ga. App. 418, 422-423 (1) (f) (785 SE2d 78) (2016) (claimant not entitled to recover punitive damages and litigation expenses under OCGA § 13-6-11 "because he has failed to state a claim upon which relief could be granted with respect to his substantive claims for relief").

*Judgment affirmed in Case No. A25A0848. Judgment reversed in Case No. A25A0849. Dillard, P. J., and Land, J., concur.*