20604. BANKERS HEALTH AND LIFE INSURANCE CO. *v.* KNOTT.

DECIDED JULY 15, 1930.

*Turpin & Lane,* for plaintiff in error.
*Stanford Arnold,* contra.

LUKE, J. This case is here on direct exceptions to a judgment overruling demurrers to the petition, which sets out substantially the following case:

1. "The Bankers Health and Life Insurance Company is an insurance company . . having an agent and place of doing business in Coweta County, Georgia."

2. Said company is indebted to petitioner in the sum of $371.16, principal, besides interest, damages, and attorney's fees, on a contract of insurance, a copy of which is hereto attached.

3. Said principal sum is disability benefit due petitioner "from August 24, 1929, up to and including December 28, 1929, at the rate of $20.62 per week, petitioner having become disabled through illness and accident on August 14, 1929."

4. From and after January 16, 1928, petitioner paid all premiums as required under said contract of insurance, and "at the time of his disability had purchased and paid for said insurance on basis of his salary of $27.50 per week."

5. "On the date of said contract and prior thereto petitioner was a regular employee of defendant company, and remained in its employ continuously from said date until August 24, 1929, and now is, in so far as rights under described policy are concerned, an employee of defendant company."

6. When he was first employed by defendant company petitioner was in good health, but after said policy issued his health entirely failed. He became afflicted with pulmonary tuberculosis, high blood pressure, hypertension, and a general breakdown, but was discharging his duties satisfactorily until August 14, 1929, when he broke his right arm while cranking an automobile in his said employer's business.

7. "Defendant had full knowledge of petitioner's condition, and paid him under said policy during the first seven days of disability."

8. "After said time defendant's company, without any justification and reason, refused to pay your petitioner anything."

9. Defendant company, after petitioner became disabled, and with full knowledge of said disability and his helpless and dependent condition, on August 24, 1929, pretended and endeavored to discharge him. At the time he was in a disabled condition and his rights under said insurance had already matured, and any effort made to discharge him while in such condition was illegal and void.

10. "Said effort to discharge and said pretended discharge was

done solely in an effort to defraud . . petitioner of his rights under described policy, and was fraudulent, void, and illegal."

11. "At the time defendant company made such an illegal and fraudulent effort, . . petitioner was totally unable to work and . . totally disabled; which said fact was known to said company, and defendant company had no justification, cause, and reason to discharge your petitioner, and had no right to do so in order to defeat his rights under described policy."

12. "This refusal to pay him benefits legally due him by said company is not in good faith, but is in absolute bad faith, and . . petitioner is entitled to recover in this action damages and attorney's fees as provided by law."

13. "Petitioner shows that his reasonable attorney's fees for bringing and prosecuting this action is $200."

Petitioner prays that he recover of defendant company the sum of $371.16 principal, $92.79 damages, and $200 attorney's fees.

The exhibit attached to the petition is in the nature of a circular letter from the defendant to "all employees of the Bankers Health and Life Insurance Company," notifying them that defendant had discontinued its plan of maintaining group life insurance for the benefit of its employees and had substituted therefor a "death benefit fund out of which to pay to the properly designated beneficiary or beneficiaries of any of its employees, in the event of the death of any such employee after the completion of six month's continuous service with the company, the sum of $500, or, after not less than one year of such continuous service, the sum of $1,000," such death benefit fund to "be maintained for and paid only to bona fide dependents of the deceased employees, and not to an estate if there are no dependents." Those parts of said circular letter with which we are concerned follow: "The company will maintain for the benefit of its employees a disability benefit fund under which a weekly indemnity to the extent of three fourths of the salary of any such employee may be purchased by and paid to him in the event of his disability through illness or accident, the cost of such indemnity to any employee desiring to receive the benefit of its provisions being at the rate of 6-1/4 ¢ weekly for each $5 of weekly indemnity, the company undertaking to provide any other amount needed to cover cost thereof, the cost contribution of each employee to be paid in cash weekly or monthly, in

advance, through the superintendent of the district in which such employee is engaged." "The disability fund herein provided will be available and effective beginning on the eighth continuous day of disability through illness or accident. The regular salary of such disabled employee will be paid by the company during the first seven days of disability." The next provision is that such fund will be available for a period not exceeding 20 weeks of continuous disability in any year, and is limited to three fourths of the regular salary of such employee. The next provision is that acceptance of this plan is optional. The next provision is as follows: "Termination. The benefits granted under the above-mentioned funds, being entirely voluntary on the part of the company, may be discontinued at any time by the company upon notice to its employees, given in a manner similar to this notice, and in any event shall cease and determine immediately when and as any employee who has accepted the provisions of such benefit funds leaves the service of the company or is dismissed, this fund ceasing to be available beyond the time of such notice or the period of such service, and any interest or claim of interest of any employee in said fund shall cease and determine immediately upon such termination of service."

It is insisted by counsel for the insurance company that the contract must be carried out as written, and that under its terms it terminates when an employee "leaves the service of the company or is dismissed." The contract specifically provides that the disability benefit fund will be available and beginning on the eighth continuous day of disability through illness or accident, and that the employee's regular salary shall be paid during the first seven days of disability. This clause would be eliminated from the contract, and plaintiff's rights thereunder destroyed, if the foregoing contention of the plaintiff in error is valid. After an employee had paid for the disability benefit and become entitled thereto, the defendant could destroy such right by the simple process of discharging the employee. It is well-seasoned law that contracts are construed most strongly against the parties preparing them, and so as to carry out the purposes of the contracting parties. Surely it takes no citation of authority to show that in a case like this the contract will not be construed in such a way as to defeat the accrued rights of the beneficiary. We are satisfied that the court did not

err in overruling the general demurrer to the petition, and so hold. In this connection see *Clay* v. *Phenix Ins. Co.*, 97 Ga. 44, 52 (25 S. E. 417).

The first special ground of the demurrer is that "said suit is not a suit on a policy of insurance, and plaintiff is therefore not entitled to recover damages or attorney's fees. The Civil Code of 1910, § 2549, contains this provision: "The several insurance companies of this State, and foreign insurance companies doing business in this State, in all cases when a loss occurs, and they refuse to pay the same within sixty days after a demand shall have been made by the holder of the policy on which said loss occurred, shall be liable to pay the holder of said policy, in addition to the loss, not more than twenty-five per cent. on the liability of said company for said loss; also, all reasonable attorney's fees for the prosecution of the case against said company: Provided, it shall be made to appear to the jury trying the same that the refusal of the company to pay said loss was in bad faith." "Broadly defined, insurance is a contract by which one party, for a compensation called the premium, assumes particular risks of the other party and promises to pay to him or his nominee a certain or ascertainable sum of money on a specified contingency." 32 C. J. 975, sec. 1. In the case of *People's Loan & Savings Co.* v. *Fidelity & Casualty Co.*, 39 Ga. App. 339 (4) (147 S. E. 171), it was held: "Section 2549 of the Civil Code of 1910, which provides that an insured may recover of an insurance company an amount representing penalty and attorney's fees where the insurer is guilty of bad faith in failing to pay the loss arising under the policy, is not restricted in its application to any particular class of insurance companies, but applies to fidelity insurance companies, and to policies . . insuring employers against defalcations of their employees." We cite this decision to show the tendency of our courts to apply the said code section broadly where the relation of insured and insurer exists. The first paragraph of the petition alleges that the defendant is an insurance company. Unquestionably the contract under consideration is in its essence a contract of insurance. We see no reason why this code section is not applicable to the defendant, and we hold that the court did not err in overruling the first ground of the demurrer.

The next and last ground of the demurrer is that the petition

"wholly fails to allege any demand for the amount claimed to be due plaintiff by defendant, and refusal to pay the same sixty days before said suit was brought." The petition was filed December 31, 1929. Paragraph 8 of the petition was amended as follows: "After said time defendant company, without any justification or legal reason, refused to pay your petitioner anything. Petitioner made upon defendant company repeated demands for payments of benefits as same became due, said demands being made to its home office in Macon, and through J. L. Hines, its district manager at Griffin, Ga., and on September 4, 1929, said company, by and through its district manager, J. L. Hines, and by and through the treasurer of its disability fund, Robert L. Hay, refused payment of any amount under said contract, and unconditionally disclaimed any liability on the part of the company and on the part of its disability fund, and said company has persisted in said refusal since said date and still illegally persists therein." Clearly the demurrer under consideration is not good.

*Judgment affirmed. Broyles, C. J., and Bloodworth, J., concur.*