19476. KNOWLES *v.* HOUSING AUTHORITY OF THE CITY OF COLUMBUS.

ARGUED OCTOBER 8, 1956—DECIDED NOVEMBER 13, 1956—REHEARING DENIED DECEMBER 5, 1956.

*Charles A. Hughey, Vincent P. McCauley,* for plaintiff in error. *Swift, Pease, Davidson & Chapman, W. M. Page,* contra.

CANDLER, Justice. (After stating the foregoing facts). Beginning with *Williamson* v. *Housing Authority of Augusta,* 186 *Ga.* 673 (199 S. E. 43), and in several cases since then, this court has been called on to consider questions concerning our housing authorities law of 1937 (Ga. L. 1937, p. 210), and the amendments thereto; but until this case reached the court, we have not had for decision the question of whether or not an action can be maintained against a housing authority for a personal injury it negligently

inflicted on one of its tenants. That question, and that question only, is presented for decision by the case now in hand. As shown by our statement of the case, the trial court and the Court of Appeals have held that such an action is not maintainable. Their rulings are predicated on the proposition that a housing authority is an instrumentality of the State which performs governmental functions, and is therefore immune from tort actions. In fixing or prescribing the powers of a housing authority, section 8 of our act of 1937 in part provides: "An authority shall constitute a public body corporate and politic, exercising public and essential governmental functions, and having all the powers necessary or convenient to carry out and effectuate the purposes and provisions of this Act, including the following powers in addition to others herein granted: (a) To sue and be sued." This section of the act confers other broad corporate powers on a housing authority, among which are perpetual succession, the right of eminent domain, authority to insure or provide for the insurance of any real or personal property or operations of the authority against any risks or hazards, to option, lease, purchase, exchange, and sell real and personal property or any interest therein, and to erect or construct dwelling accommodations for rent or lease to persons of low income, and from time to time establish and revise the rents or charges therefor. The controlling question in this case is the effect of the "sue and be sued" clause in our housing act. This court in *Culbreth* v. *Southwest Georgia Regional Housing Authority*, 199 *Ga.* 183, 189 (33 S. E. 2d 684), unanimously held that a housing authority created by our act is in effect an instrumentality of the State, and it is argued in the brief for Mrs. Knowles that the "sue and be sued" clause is a waiver of the State's immunity from suit in all cases of any character against a housing authority. The act under which the Federal Housing Administration was created provides: "The administrator shall, in carrying out the provisions of this subchapter and subchapters II, III, and VI, be authorized, in his official capacity, to sue and be sued in any court of competent jurisdiction, State or Federal." 12 U. S. C. A. 533, § 1702.

In Keifer & Keifer *v.* Reconstruction Finance Corporation, 306 U. S. 381, 390 (59 Sup. Ct. 516, 83 L. ed. 784), it was said: "Because of the advantages enjoyed by the corporate device com-

pared with conventional executive agencies, the exigencies of war and the enlarged scope of government in economic affairs have greatly extended the use of independent corporate facilities for governmental ends. In spawning these corporations during the past two decades, Congress has uniformly included amenability to law. Congress has provided for not less than forty of such corporations discharging governmental functions, and without exception the authority to-sue-and-be-sued was included. Such a firm practice is partly an indication of the present climate of opinion which has brought governmental immunity from suit into disfavor, partly it reveals a definite attitude on the part of Congress which should be given hospitable scope." And in the same case at page 396, it was said: "Congress has embarked upon a generous policy of consent for suits against the government sounding in tort even where there is no element of contract." The Keifer case was reaffirmed by the United States Supreme Court in Reconstruction Finance Corporation v. J. G. Menihan Corporation, 312 U. S. 81, 83 (61 Sup. Ct. 485, 486, 85 L. ed. 595), where the court's opinion was prepared by Chief Justice Hughes. In Federal Housing Administration v. Burr, 309 U. S. 242 (60 Sup. Ct. 488, 84 L. ed. 724), the Supreme Court of the United States, where the question presented was whether the Federal Housing Administration was subject to garnishment for money due an employee, and where the court held that it was so subject under the "sue and be sued" clause contained in the act under which it was created, said: "As indicated in Keifer & Keifer v. Reconstruction Finance Corp., supra, we start from the premise that such waivers by Congress of governmental immunity in case of such Federal instrumentalities should be liberally construed. This policy is in line with the current disfavor of the doctrine of governmental immunity from suit, as evidenced by the increasing tendency of Congress to waive the immunity where Federal governmental corporations are concerned. . . Hence, when Congress establishes such an agency, authorizes it to engage in commercial and business transactions with the public, and permits it to 'sue and be sued', it cannot be lightly assumed that restrictions on that authority are to be implied. Rather if the general authority to 'sue and be sued' is to be delimited by implied exceptions, it must be clearly shown that certain types of suits are

not consistent with the statutory or constitutional scheme, that an implied restriction of the general authority is necessary to avoid grave interference with the performance of a governmental function, or that for other reasons it was plainly the purpose of Congress to use the 'sue and be sued' clause in a narrow sense. In the absence of such showing, it must be presumed that when Congress launched a governmental agency into the commercial world and endowed it with authority to 'sue or be sued', that agency is not less amenable to judicial process than a private enterprise under like circumstances would be."

In Zins v. Justus, 211 Minn. 1, 10 (299 N. W. 685), which was an action for damages growing out of an automobile collision and where the trial court sustained a demurrer interposed by McDonald in his official capacity which challenged the plaintiff's right to maintain a tort action against him as such administrator, the court, in reversing the judgment sustaining McDonald's demurrer, said: "The Federal Housing Administration, although a government instrumentality engaged in the performance of important governmental functions, has many of the characteristics of private business corporations. It is authorized to enter the field of insurance, a purely private enterprise. It may, and does, compete with private loan agencies. In the establishment of National Mortgage Associations it is permitted to borrow from the public and loan the money so borrowed back to the public. These activities are all of a commercial or semicommercial nature and are in direct competition with private corporations engaged in like enterprises. We believe that Congress, when it created the Federal Housing Administration and launched it in the commercial field, did not intend to immunize it, its administrator, and the latter's agents and employes from suit for torts. If it had such intention, it could and no doubt would have done so by direct provision."

The State of Alabama has a housing authorities act very similar to our act. It also contains a "sue and be sued" clause, and the Supreme Court of that State in Housing Authority of Birmingham District v. Morris, 244 Ala. 557 (14 So. 2d 527), held that an action for damages could be maintained against the Authority for a personal injury negligently inflicted on one of its tenants. In that case it was said (p. 567): "The suggestion that

said corporation is a governmental agency is no answer to its liability. The books are full of decisions holding that such governmental agencies may be sued where the statutes under which they exist so authorize. An apt illustration is the Director General of Railroads created and existing during World War I."

Section 8 of California's housing authority act contains a provision exactly like the previously quoted provision from our act, and in Muses v. Housing Authority of City & County of San Francisco, (Cal.) 189 Pac. 2d 305, it was said: "The state, to the extent that it must remain within its realm of power protecting the benefits as originally intended, is sovereign, but when it steps out from its all supreme position as ruler and competes with industry or labor, then, so far as tort liability is concerned, it must be held to be acting in a proprietary capacity and be subject to the same liability for its torts as private parties. The fact that the intention of the act is that it shall be administered without profit is beside the point. The state through its agency has entered the commercial field. Having created and operated a business enterprise it is liable for a tort."

The housing act here involved was complete in every respect when it left the hands of the legislature. It fully created and established in and for each city of this State having a population of 5,000 or more, a public body corporate and politic to be known as the "Housing Authority." It provided that the public corporation so created was not to transact any business until the governing body of the city, under terms, conditions, and procedure laid down by the act, found and declared that there was a need for it to function. *Telford* v. *City of Gainesville*, 208 *Ga.* 56 (65 S. E. 2d 246). As previously pointed out, the General Assembly of this State has by express terms given every housing authority created by it the unlimited and unqualified right to "sue and be sued." It has conferred upon those authorities the right to erect safe and sanitary dwelling accommodations for lease or rent by it to people of low income, and to revise the rents or charges therefor from time to time. Hence, it has created a public corporation and endowed it with power to engage in commercial and business transactions with the public and in competition with free enterprise. Since the primary purpose of the act was to provide safe and sanitary dwelling accommodations for people of

low income, it seems to us that it would be ironic to hold that a housing authority, which has the unquestioned right to sue and be sued, could with immunity from suit negligently inflict a personal injury on one of its tenants; and this is especially true since all to whom it furnishes dwelling accommodations must pay the rent or charges it fixes therefor. Consequently, we hold that the plaintiff's action was maintainable against the defendant.

In making the above ruling, we have not overlooked or failed to consider *Tounsel* v. *State Highway Department,* 180 *Ga.* 112 (178 S. E. 285), *Millwood* v. *DeKalb County,* 106 *Ga.* 743 (32 S. E. 577), and *Collins* v. *Mayor &c. of Macon,* 69 *Ga.* 542. Those cases are cited in the brief for the defendant and relied on for authority that the State Highway Department, a county, or a municipality, though it has legislative authority to sue and be sued, cannot be sued for damages resulting from an injury it negligently inflicts while engaged in the performance of a governmental function. They relate to and deal with an injury which the defendant negligently inflicted while performing a purely governmental function for which it made no charge and from which it received no income or revenue; and not, as in this case, where the defendant when the injury complained of was inflicted was engaged in the performance of a remunerative business transaction with the public pursuant to the consent statute. Hence, the rule announced in those cases, and others like them, is not applicable to the case at bar.

From what has been said above, it follows that the judgment complained of is erroneous.

*Judgment reversed. All the Justices concur, except Wyatt, P. J., not participating.*