313 Ga. 294
FINAL COPY

S21G0482.  ATLANTIC SPECIALTY INSURANCE COMPANY v. CITY OF COLLEGE PARK et al.

NAHMIAS, Chief Justice.

Dorothy Wright and her grandchildren, Cameron Costner and Layla Partridge, (collectively, the "Decedents") were killed when their vehicle was struck by a stolen vehicle that was being chased by College Park Police Department officers. At the time of the accident, the City of College Park had an insurance policy provided by Atlantic Specialty Insurance Company ("Atlantic"), which provided coverage for negligent acts involving the City's motor vehicles up to $5,000,000 but also included immunity endorsements which say that Atlantic has no duty to pay damages "unless the defenses of sovereign and governmental immunity are inapplicable."

Joi Partridge,[1] Floyd Costner,[2] and Douglass Partridge[3] (collectively, the "Plaintiffs") filed a lawsuit against the City, raising claims of negligence and recklessness resulting in the wrongful deaths of the three Decedents, to which the City raised sovereign immunity as a defense. The Plaintiffs assert that the insurance policy limit is $5,000,000 for the three deaths, while Atlantic maintains that the policy limit is capped at $700,000 under the relevant statutory scheme and the terms of the City's policy. As the parties agree, pursuant to OCGA § 36-92-2 (a) (3), the sovereign immunity of local government entities is automatically waived up to $700,000 in this instance, regardless of whether the City has a liability insurance policy. However, OCGA § 36-92-2 (d) (3) provides that "[a] local government entity [that] purchases commercial liability insurance in an amount in excess of the [statutory

---

[1] Individually, as personal representative of the Estate of Dorothy Wright, as parent and co-personal representative of the Estate of Cameron Costner, and as parent and co-personal representative of Layla Partridge.

[2] Individually and as parent and co-personal representative of the Estate of Cameron Costner.

[3] Individually and as parent and co-personal representative of Layla Partridge.

minimum] waiver" increases the waiver to the extent of the excess insurance.

Atlantic intervened in the case to litigate the limit of the insurance policy. The trial court ruled that the policy limit is $5,000,000, and the Court of Appeals affirmed. See *Atlantic Specialty Ins. Co. v. City of College Park*, 357 Ga. App. 556 (851 SE2d 189) (2020). This Court then granted Atlantic's petition for certiorari to decide whether the City's insurance policy waives the City's sovereign immunity under OCGA § 36-92-2 (d) (3). As explained below, because the Court of Appeals incorrectly ruled that the City's insurance policy increased the sovereign immunity waiver notwithstanding the immunity endorsements, which expressly preclude coverage when a sovereign immunity defense applies, we reverse.

1. The pertinent facts are undisputed. On January 31, 2016, the Decedents were killed when their vehicle was struck by a stolen vehicle involved in a high-speed chase with College Park Police officers. At the time of the accident, the City held an insurance policy

3

(the "Policy") issued by Atlantic,[4] which was effective from June 1, 2015 through June 1, 2016. The Policy included business auto and excess liability coverage, among other things. The limits under the Policy are $1,000,000 under the business auto section and $4,000,000 under the excess liability section.

Both sections of the Policy, however, contained endorsements entitled "Georgia Changes — Protection of Immunity," which we will refer to as the "Immunity Endorsements." The business auto section's Immunity Endorsement provides as follows:

**A. Changes in Liability Coverage**
The following is added to **A. Coverage** under **SECTION II — LIABILITY COVERAGE**

We have no duty to pay damages or any "covered pollution cost or expense" on your behalf under this policy unless the defenses of sovereign and governmental immunity are inapplicable to you.

**B. Changes in Conditions**
The following is added to **SECTION IV — BUSINESS AUTO CONDITIONS**

---

[4] The record intermittently refers to the insurer as "One Beacon." However, One Beacon is the insurance broker, while Atlantic is the insurance provider.

This policy and any coverages associated therewith does not constitute, nor reflect an intent by you, to waive or forego any defenses of sovereign and governmental immunity available to any Insured, whether based upon statute(s), common law or otherwise, including Georgia Code Section 36-33-1, or any amendments.

Likewise, the excess liability section's Immunity Endorsement provides:

The following is added to **SECTION I — COVERAGE**

**A. INSURING AGREEMENT — EXCESS LIABILITY**

We have no duty to pay "damages" on your behalf under this policy unless the defenses of sovereign and governmental immunity are inapplicable to you.

The following is added to **SECTION V — CONDITIONS**

This policy and any coverages associated therewith does not constitute, nor reflect an intent by you, to waive or forego any defenses of sovereign and governmental immunity available to any Insured, whether based upon statute(s), common law or otherwise, including Georgia Code Section 36-33-1, or any amendments.

In April 2016, the Plaintiffs filed suit against the City[5] in the State Court of Fulton County ("trial court"), asserting claims of

---

[5] The Plaintiffs later amended their complaint to add additional defendants, but those parties are not part of this appeal.

negligence and recklessness in connection with the wrongful deaths of the Decedents. The City answered, raising the defense of sovereign immunity.[6]

While the case was pending before the trial court, Atlantic filed a declaratory judgment action in the United States District Court for the Northern District of Georgia, seeking a declaration that the Policy's limit as to the Plaintiffs' claims is $700,000 when reading the Immunity Endorsements in connection with OCGA § 36-92-2. OCGA § 36-92-2 says, in pertinent part:

> (a) The sovereign immunity of local government entities for a loss arising out of claims for the negligent use of a covered motor vehicle is waived up to the following limits: . . . (3) . . . an aggregate amount of $700,000.00 because of bodily injury or death of two or more persons in any one occurrence[.]

Subsection (d) of that statute then says, in pertinent part, that the waiver "shall be increased to the extent that: . . . (3) [t]he local government entity purchases commercial liability insurance in an

---

[6] It appears to be undisputed that sovereign immunity would bar the Plaintiffs' claims against the City if immunity has not been waived. We also note that no issues of liability (even up to $700,000) have been decided at this point, and we express no opinion on those issues.

amount in excess of the waiver set forth in this Code section." OCGA § 36-92-2 (d) (3).

In the trial court, meanwhile, the Plaintiffs filed a motion for partial summary judgment, seeking a ruling that the relevant Policy limit is $5,000,000. They contended that, by purchasing the Policy, the City waived its sovereign immunity up to $5,000,000. The Plaintiffs also asserted that the Immunity Endorsements are void because they are contrary to public policy. The trial court deferred ruling on the Plaintiffs' motion until the federal court resolved Atlantic's declaratory judgment action.

In June 2018, the federal court dismissed Atlantic's action for lack of subject matter jurisdiction. See *Atlantic Specialty Ins. Co. v. City of College Park*, 319 FSupp.3d 1287 (N.D. Ga. 2018). The Plaintiffs then renewed their motion for partial summary judgment in the trial court, and Atlantic was allowed to intervene in the state court lawsuit to litigate the Policy's limit. Atlantic filed its own motion for partial summary judgment, contending that the Policy's limit as to the Plaintiffs' claims is $700,000.

7

In August 2019, the trial court ruled that the relevant Policy limit is $5,000,000. The court held that the Immunity Endorsements improperly attempted to "contract around" the sovereign immunity waiver "requirements" of OCGA §§ 36-92-2 and 33-24-51.[7] Atlantic

---

[7] OCGA § 33-24-51 says:

(a) A municipal corporation, a county, or any other political subdivision of this state is authorized in its discretion to secure and provide insurance to cover liability for damages on account of bodily injury or death resulting from bodily injury to any person or for damages to property of any person, or for both arising by reason of ownership, maintenance, operation, or use of any motor vehicle by the municipal corporation, county, or any other political subdivision of this state under its management, control, or supervision, whether in a governmental undertaking or not, and to pay premiums for the insurance coverage.

(b) The sovereign immunity of local government entities for a loss arising out of claims for the negligent use of a covered motor vehicle is waived as provided in Code Section 36-92-2. Whenever a municipal corporation, a county, or any other political subdivision of the state shall purchase the insurance authorized by subsection (a) of this Code section to provide liability coverage for the negligence of any duly authorized officer, agent, servant, attorney, or employee in the performance of his or her official duties in an amount greater than the amount of immunity waived as in Code Section 36-92-2, its governmental immunity shall be waived to the extent of the amount of insurance so purchased. Neither the municipal corporation, county, or political subdivision of this state nor the insuring company shall plead governmental immunity as a defense; and the municipal corporation, county, or political subdivision of this state or the insuring company may make only those defenses which could be made if the insured were a private person.

(c) The municipal corporation, county, or any other political

8

appealed.

The Court of Appeals affirmed the trial court's ruling. See *Atlantic Specialty Ins. Co.*, 357 Ga. App. at 565. Asserting that the legislature's intent in enacting OCGA §§ 36-92-2 and 33-24-51 was to "protect members of the public by waiving the sovereign immunity of local government entities with respect to claims for the negligent use of a motor vehicle and establishing the limits of the amount of the waiver in the event the government entity purchases liability insurance," the Court of Appeals concluded that "Atlantic's application of this statutory scheme runs counter to the General Assembly's clear legislative intent." *Atlantic Specialty*, 357 Ga. App. at 562-563. The court asserted it is "undisputed that the policy

---

subdivision of this state shall be liable for damages in excess of the amount of immunity waived as provided in Code Section 36-92-2 which are sustained only while the insurance is in force and only to the extent of the limits or the coverage of the insurance policy.

(d) If a verdict rendered by the jury exceeds the limits of the applicable insurance, the court shall reduce the amount of said judgment or award to a sum equal to the applicable limits stated in the insurance policy but not less than the amount of immunity waived as provided in Code Section 36-92-2.

(e) Premiums on the insurance authorized by subsection (a) of this Code section shall be paid from the general funds of the municipal corporation, county, or political subdivision.

coverage amounts exceed the statutory limits of OCGA § 36-92-2 (a) (3)." Id. at 563. The court added that to interpret the Immunity Endorsements as argued by Atlantic would "grant insurers and local government entities carte blanche to contract around the legislature's clear intent to increase compensation for those who sustain injuries arising out of the use of a government motor vehicle." Id. Atlantic filed a petition for certiorari, which this Court granted.

2.    The Georgia Constitution provides municipalities performing their governmental functions with immunity from civil liability, which only the General Assembly (or the Constitution itself) may waive. See *Gatto v. City of Statesboro*, 312 Ga. 164, 166-168 (860 SE2d 713) (2021). See also Ga. Const. of 1983, Art. IX, Sec. II, Par. IX ("The General Assembly may waive the immunity of counties, municipalities, and school districts by law."). In OCGA § 36-33-1 (a), the General Assembly reiterated that sovereign immunity for municipalities is the State's public policy, while also expressly providing several narrow waivers including through

10

operation of OCGA §§ 33-24-51 and 36-92-2:

> (a) Pursuant to Article IX, Section II, Paragraph IX of the Constitution of the State of Georgia, the General Assembly, except as provided in this Code section and in Chapter 92 of this title, declares it is the public policy of the State of Georgia that there is no waiver of the sovereign immunity of municipal corporations of the state and such municipal corporations shall be immune from liability for damages. A municipal corporation shall not waive its immunity by the purchase of liability insurance, except as provided in Code Section 33-24-51 or 36-92-2, or unless the policy of insurance issued covers an occurrence for which the defense of sovereign immunity is available, and then only to the extent of the limits of such insurance policy. This subsection shall not be construed to affect any litigation pending on July 1, 1986.

OCGA § 36-33-1 (a).

Prior to 2005, local government entities (which include municipalities) had discretion to purchase liability insurance for damages arising from the use of the entities' motor vehicles under OCGA § 33-24-51, which at that time provided "a limited waiver of their governmental immunity to the amount of the insurance purchased." *Cameron v. Lang*, 274 Ga. 122, 126 (549 SE2d 341) (2001). As a result, courts had to analyze the applicable insurance policy to determine whether the policy covered the particular claim

11

at issue and thus waived sovereign immunity, and to what limit. See

*Chamlee v. Henry County Bd. of Ed.*, 239 Ga. App. 183, 185-186 (521

SE2d 78) (1999) ("Resolution of whether sovereign immunity has

been waived necessarily requires an analysis of whether the

defendant has purchased the type of insurance defined in OCGA

§ 33-24-51 (a) and (b) *and* whether the claim falls within that

coverage." (emphasis in original)). See also *Dugger v. Sprouse*, 257

Ga. 778, 779 (364 SE2d 275) (1988) (explaining that under the

sovereign immunity provision in Article I of the 1983 version of the

Georgia Constitution, which waived immunity based on a county's

purchase of insurance, "where the plain terms of the policy provide

that there is no coverage for the particular claim, the policy does not

create a waiver of sovereign immunity as to that claim. . . . Where

there is no insurance coverage, there is no waiver of sovereign

immunity."). Recognizing that this statutory scheme disincentivized

local government entities from purchasing insurance, this Court

"urge[d] the legislature to remove the city and county's discretion

and require them to procure liability insurance for the operation of

their vehicles." *Cameron*, 274 Ga. at 127.

In 2002 (although not effective until 2005), the General Assembly amended OCGA § 33-24-51 and added OCGA § 36-92-2. See Ga. L. 2002, p. 579, §§ 1, 3. However, instead of requiring cities and counties to purchase liability insurance for the use of their motor vehicles as the Court had suggested in *Cameron*, the General Assembly established an automatic waiver of sovereign immunity for losses arising out of claims for the negligent use of covered motor vehicles up to certain prescribed limits, including $700,000 for the bodily injury or death of two or more persons in a single occurrence. See OCGA § 36-92-2 (a) (3). The new § 36-92-2 (d) then listed three ways by which a local government entity could increase the immunity waiver. The one at issue here, in paragraph (d) (3), says that "[t]he waiver provided by this chapter shall be increased to the extent that . . . [t]he local government entity purchases commercial liability insurance in an amount in excess of the waiver set forth in this Code section." OCGA § 36-92-2 (d) (3).

Thus, the enactment of the automatic immunity waiver in 2002

changed only the analysis with respect to a loss *under* the applicable automatic waiver limit, as to which the local government entity's purchase of liability insurance is irrelevant. Because of the automatic waiver, there is no dispute in this case that the City's sovereign immunity was waived up to $700,000. But to increase the waiver of sovereign immunity *beyond* $700,000, the analysis remains the same as under the pre-2002 law: the court must determine whether the City, in its discretion, purchased commercial liability insurance in excess of $700,000 that covers the claim at issue.[8]

---

[8] We have described the statutory scheme established by the 2002 law as having two tiers:

> The first tier, established under OCGA § 36-92-1 et seq., requires local entities to waive sovereign immunity — up to certain prescribed limits — for incidents involving motor vehicles regardless of whether they procure automobile liability insurance. The second tier, enacted by OCGA § 33-24-51 (b), and as revised in 2002, provides for the waiver of sovereign immunity to the extent a local entity purchases liability insurance in an amount exceeding the limits prescribed in OCGA § 36-92-2.

*Gates v. Glass*, 291 Ga. 350, 352-353 (729 SE2d 361) (2012) (footnote omitted). While the first tier set out new and mandatory waiver limits, the second tier still requires coverage analysis like the pre-2002 version did to determine whether the insurance that the local government entity purchased actually covers the claim at issue.

The Court of Appeals misinterpreted OCGA § 36-92-2 (d) (3) to mean that the purchase of liability insurance in excess of the statutorily prescribed limit in subsection (a) waives sovereign immunity to the limit of the insurance purchased for *any* sort of claim. But an insurance policy does not normally provide blanket coverage for any and all claims. Insurance policies are contracts that specify what types of losses are covered and to what monetary limits, and the premiums paid by policyholders are normally determined by assessing the risk that the insurer assumes for the specific claims covered. See OCGA § 33-1-2 (4) (defining "insurance" as used in the Insurance Title as "a contract which is an integral part of a plan for distributing individual losses whereby one undertakes to indemnify another or to pay a specified amount or benefits upon determinable contingencies"); *Bankers' Health & Life Ins. Co. v. Knott*, 41 Ga. App. 639, 643 (154 SE 194) (1930) ("'Broadly defined, insurance is a contract by which one party, for a compensation called the premium, assumes particular risks of the other party and promises to pay to him or his nominee a certain or ascertainable sum of money on a

15

specified contingency.'" (citation omitted)).

In accordance with this principle, while OCGA § 33-24-51 (b) cross-references the waiver of sovereign immunity provided by OCGA § 36-92-2, OCGA § 33-24-51 (c) specifies that a local government entity is "liable for damages in excess of the amount of immunity waived as provided in Code Section 36-92-2 which are sustained only while the insurance is in force and only to the extent of the limits or the coverage of the insurance policy." Thus, for example, a commercial liability policy covering only the negligent use of a city's garbage trucks is not "insurance purchased" for purposes of a claim arising from the negligent use of the city's police cars. Likewise, purchase of a commercial liability insurance policy that expired prior to an accident would not be "insurance purchased" under OCGA § 36-92-2 (d) (3) to raise the sovereign immunity waiver for that accident above the automatic waiver limit.

The Court of Appeals asserted that Atlantic had attempted to "contract around the legislature's clear intent to increase compensation for those who sustain injuries arising out of the use of

16

a government motor vehicle." *Atlantic Specialty*, 357 Ga. App. at 563. That might be true if Atlantic claimed that the Policy somehow prevented the City from being liable for up to the $700,000 prescribed by the automatic waiver in OCGA § 36-92-2 (a) (3). But Atlantic has never argued that the Immunity Endorsements allow the City to avoid that waiver. Instead, Atlantic has argued only that the City did not waive immunity for liability above $700,000 under OCGA § 36-92-2 (d) (3).

Only the automatic waiver limits represent the General Assembly's "clear intent to increase compensation." In amending OCGA § 33-24-51 and enacting OCGA § 36-92-2 in 2002, the legislature did not guarantee full compensation or require local government entities to purchase liability insurance providing compensation above the automatic waiver limits. The purchase of insurance providing coverage in excess of the automatic waiver limits, thus further waiving sovereign immunity, remains just as it was before 2002 — a decision left to the discretion of local government entities. Under current Georgia law, it is not against

17

public policy for local government entities to decline to purchase liability insurance or to purchase liability insurance that does not cover any and all losses resulting from the use of their motor vehicles. Thus, the Immunity Endorsements do not contravene public policy.[9]

3.    To determine whether the insurance contract between the City and Atlantic provides more than $700,000 of coverage for the

---

[9] Appellate courts in two other states with similar statutory sovereign-immunity-waiver schemes have repeatedly held that insurance policies with similar immunity endorsements do not waive sovereign immunity. See, e.g., *State ex rel. City of Grandview v. Grate*, 490 SW3d 368, 372 (Mo. 2016) (holding that a city "did not waive sovereign immunity when it purchased an insurance policy that disclaimed coverage for any actions that would be prohibited by sovereign immunity"); *Patrick v. Wake County Dept. of Human Svcs.*, 655 SE2d 920, 923-924 (N.C. App. 2008) ("A governmental entity does not waive sovereign immunity if the action brought against [it] is excluded from coverage under [its] insurance policy."). See also *Memorial Hospital of Sweetwater County v. Menapace*, 404 P3d 1179, 1185 (Wyo. 2017) ("[W]e must again emphasize that a government entity's purchase of liability insurance is not an absolute or complete waiver of immunity. The purchase of insurance extends liability only to the extent of the insurance coverage."). An amicus curiae brief in support of the Plaintiffs notes that a federal district court, applying a somewhat similar statutory scheme in Minnesota law, ruled that an immunity endorsement subverted the statute and "[t]he mere act of procuring insurance in excess of the statutory caps constitutes a waiver [of sovereign immunity]." *Frazier v. Bickford*, No. 14-CV-3843 (SRN/JJK), 2015 WL 6082734, at *4, *7 (D. Minn. Oct. 15, 2015). The policy language at issue in *Frazier* was somewhat different than in the Policy here, but more significantly, we are not persuaded by the district court's statutory analysis (and we note that the magistrate judge in that case had reached the opposite conclusion).

Plaintiffs' claims, we examine the language of the Policy. The Immunity Endorsement to the Policy's business auto section states in relevant part: "We have no duty to pay damages . . . on your behalf under this policy unless the defenses of sovereign and governmental immunity are inapplicable to you." The excess liability section's Immunity Endorsement says the same thing. These endorsements do not exclude claims for damages to which the defenses of sovereign and governmental immunity do not apply. Pursuant to OCGA §§ 33-24-51 (b) and 36-92-2 (a) (3), the defenses of sovereign and governmental immunity are clearly not applicable to losses from the Plaintiffs' claims up to $700,000. Thus, as all the parties agree, the Immunity Endorsements do not affect Atlantic's duty under the Policy to pay damages up to that amount.

But under a plain reading of the endorsements, the insurance that the City purchased does *not* cover claims for damages to which the defenses of sovereign and governmental immunity *do* apply. To remove any doubt, the Immunity Endorsements add that the Policy does not constitute, nor reflect an intent by [the City], to

19

waive or forego any defenses of sovereign and governmental immunity available to any Insured, whether based upon statute(s), common law or otherwise, including Georgia Code Section 36-33-1, or any amendments.

Indeed, while the Plaintiffs and the amicus curiae who supports them express concern about Atlantic's reading of the Policy, the City has not expressed any doubt regarding the meaning of the Policy or any disagreement with Atlantic's interpretation of the bargained-for policy limits.

The Immunity Endorsements do not render the Policy's higher-than-$700,000 limits meaningless. The premiums that the City paid purchased insurance coverage up to the automatic sovereign immunity waiver limits in OCGA § 36-92-2 (a) and up to $5,000,000 in the aggregate for other claims to which sovereign immunity does not apply. For example, claims involving police chases brought under 42 USC § 1983 would not be subject to sovereign immunity and thus could be covered up to the Policy's aggregate maximum limit of $5,000,000. See *Owen v. City of Independence, Mo.*, 445 U.S. 622, 647-648 (100 SCt 1398, 63 LE2d 673) (1980) ("By including

municipalities within the class of 'persons' subject . . . [to claims under 42 USC § 1983], Congress . . . abolished whatever vestige of the State's sovereign immunity the municipality possessed."). These types of claims are undoubtedly less likely to occur than claims involving the general use of the City's covered motor vehicles — but presumably the premiums paid for that additional coverage would take that factor into account.

4.     The Court of Appeals would have reached the right result in this case had it followed its analogous precedent. In *Gatto v. City of Statesboro*, 353 Ga. App. 178 (834 SE2d 623) (2019), a college student died after being beaten to death by a bouncer in a bar and left to die outside. See id. at 178-179. The student's parents filed suit against the City of Statesboro, alleging claims of negligence and maintaining a nuisance. See id. at 179-180. The city moved for summary judgment, raising sovereign immunity under OCGA § 36-33-1. See *Gatto*, 353 Ga. App. at 180. The Gattos argued that the city's purchase of liability insurance waived sovereign immunity to the full extent of the insurance policy's limits and that the city could

not contract around the legislative waiver of sovereign immunity in OCGA § 36-33-1 (a), despite the policy's immunity endorsement that "expressly provides that [the policy] will not cover occurrences when sovereign immunity applies." *Gatto*, 353 Ga. App. at 183.[10]

The trial court granted summary judgment, and the Court of Appeals affirmed, holding in relevant part that "because the insurance policy does not cover the Gattos' claims here [as sovereign immunity applies], there is no legislative waiver of sovereign immunity." *Gatto*, 353 Ga. App. at 184. The court rejected the Gattos' argument that the immunity endorsement "usurps the General Assembly's legislative waiver, and allows the City to contract around the waiver." Id. The court explained that "the General Assembly has expressly provided for waiver where the policy of insurance 'covers an occurrence for which the defense of sovereign immunity is available,'" id. (quoting OCGA § 36-33-1 (a)), and that this Court "has specifically analyzed insurance policies to

___

[10] Notably, Atlantic was also the insurer in *Gatto*, and the immunity endorsement in the policy at issue there is identical to those in the Policy at issue here. See *Gatto*, 353 Ga. App. at 183.

22

determine whether they actually provide coverage for a plaintiff's claims for damages." Id. (citing *Owens v. City of Greenville*, 290 Ga. 557, 559 (722 SE2d 755) (2012)).[11]

The Court of Appeals panel in this case purported to distinguish *Gatto* by noting that "unlike the statutory scheme at issue in *Gatto*, the statutory scheme at issue here is decidedly more complex." *Atlantic Specialty*, 357 Ga. App. at 562. In fact, there is no material difference in the controlling parts of the statutory schemes or in the pertinent legal analysis. While a municipality's sovereign immunity for negligent use of a covered motor vehicle is waived automatically up to the limit set forth in OCGA § 36-92-2 (a), a municipality's waiver of sovereign immunity based on the purchase of insurance under both OCGA § 36-33-1 (a) and OCGA §§ 36-92-2 (d) and 33-24-51 (b) and (c) is determined by examining whether the

---

[11] This Court granted the Gattos' petition for certiorari to review the Court of Appeals' holding regarding their nuisance claim (which we ultimately affirmed), but we declined to review the sovereign immunity waiver holding. See *Gatto*, 312 Ga. at 166 n.2. *Gatto*'s sovereign-immunity waiver holding was followed in *Sharma v. City of Alpharetta*, 361 Ga. App. 692, 694-696 (865 SE2d 287) (2021).

insurance policy actually covers the claim at issue, and to what limit.

In light of the Immunity Endorsements, the City did not purchase insurance coverage for the Plaintiffs' asserted claims above the applicable automatic sovereign immunity waiver of $700,000. Accordingly, we reverse the judgment of the Court of Appeals.

*Judgment reversed. All the Justices concur.*

Decided February 15, 2022.

Certiorari to the Court of Appeals — 357 Ga. App. 556.

*Lewis Brisbois Bisgaard & Smith, Seth M. Friedman*, for appellant.

*Cash Krugler & Fredericks, Alwyn R. Fredericks; The Summerville Firm, J. Darren Summerville, Anna G. Cross*, for appellees.

*Hasty Pope Davis, Jonathan A. Pope; Butler Wooten & Peak, Robert H. Snyder, Jr., Joseph M. Colwell*, amici curiae.