NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.

In the Supreme Court of Georgia

Decided: June 24, 2025

S24G1346. GUY v. HOUSING AUTHORITY OF THE CITY OF AUGUSTA.

PETERSON, Chief Justice.

This case presents the question of whether a local housing authority whose existence is authorized by state statute but activated by city government is protected from a personal injury suit by sovereign immunity. The trial court granted summary judgment to that housing authority in this personal injury suit, concluding that the authority is protected by sovereign immunity as an instrumentality of the State, as a "municipal corporation," and as an "instrumentality" of a municipality. The Court of Appeals agreed with the trial court that the authority had sovereign immunity as an "instrumentality" of a municipality, based on case law about whether an entity is an instrumentality of the *State* for purposes of

sovereign immunity. But the case law about instrumentalities of the State cannot answer whether a city housing authority has immunity flowing from its relationship to a municipality, because that case law is based on a construction of a provision of the Georgia Constitution that extends sovereign immunity to all of the State's departments and agencies, and our precedent makes clear that municipalities are not departments or agencies of the State. As explained below, the question of whether an entity is protected by sovereign immunity as an "instrumentality" of a municipality is a question that can be answered only by reviewing the common law scope and nature of sovereign immunity as it applied to instrumentalities of municipalities. Neither the trial court nor the Court of Appeals has done that analysis yet, such that it would be imprudent for this Court to reach out and decide that question ourselves in the first instance based on the briefing before us. We therefore vacate the Court of Appeals's opinion and remand for further consideration of the housing authority's immunity as an instrumentality of a municipality under the proper analytical approach.

The General Assembly in 1937 passed the Housing Authorities Law, OCGA § 8-3-1 et seq. ("the Act"), declaring that "[i]n each city and in each county of the state there is created a public body corporate and politic to be known as the 'housing authority' of the city or county[,]" with the caveat that any "such authority shall not transact any business or exercise its powers" until the governing body of the relevant city or county declared a local need for such an authority. OCGA § 8-3-4. Upon such a declaration by the governing body of a city or county, commissioners comprising the authority are appointed by the mayor or county governing body, respectively. See OCGA § 8-3-50. The legislature found that the Act was necessary in order to allow "public money [to] be spent and private property acquired" so as to provide housing to low-income persons. OCGA § 8-3-2. In accordance with the Act, the Housing Authority of the city of Augusta ("the Authority") was activated by the mayor and city council of the city of Augusta by a resolution adopted in 1937.

Christina Guy filed this premises liability action in 2022, alleging that she was shot in the leg when assailants attempted to

3

rob her in front of her apartment unit. She named the Authority as the sole defendant, alleging that the Authority owned and managed her apartment complex and that it negligently failed to take appropriate measures for the safety and security of the complex's residents. The Authority moved for summary judgment, arguing that the complaint should be dismissed for lack of subject matter jurisdiction because sovereign immunity bars Guy's claims. The trial court granted the motion, concluding that because the Authority "is a municipal corporation, an instrumentality of the State of Georgia and an instrumentality of the City of Augusta, Georgia, it has protection from tort claims by sovereign immunity." The trial court also concluded that sovereign immunity had not been waived.

The Court of Appeals affirmed, concluding that the Authority was entitled to sovereign immunity. See *Guy v. Housing Auth. of the City of Augusta*, 372 Ga. App. 325 (904 SE2d 375) (2024). In reaching this conclusion, the Court of Appeals cited Article IX, Section II, Paragraph IX of the Georgia Constitution ("The General Assembly

4

may waive the immunity of counties, municipalities, and school districts by law.") and OCGA § 36-33-1 (a) ("[T]he General Assembly, except as provided in this Code section and in Chapter 92 of this title, declares it is the public policy of the State of Georgia that there is no waiver of the sovereign immunity of municipal corporations of the state and such municipal corporations shall be immune from liability for damages.") for the proposition that "municipal corporations remain immune from suit under the present constitutional and statutory framework except to the extent that sovereign immunity has been waived by the General Assembly." *Guy*, 372 Ga. App. at 327 (footnote omitted). The Court of Appeals concluded based on its own precedent that "sovereign immunity extends, as it did at common law, to instrumentalities of a municipal corporation." Id. (citing *Hosp. Auth. of Fulton County v. Litterilla*, 199 Ga. App. 345, 346-347 (1) (404 SE2d 796) (1991), reversed by 262 Ga. 34 (413 SE2d 718) (1992)). The Court of Appeals then proceeded to apply our case law construing the constitutional grant of sovereign immunity to the State and its departments and agencies

5

to determine that "the Authority is an instrumentality of the City such that it is entitled to sovereign immunity." *Guy*, 372 Ga. App. at 327-330 (2) (citing *Kyle v. Ga. Lottery Corp.*, 290 Ga. 87, 91 (1) (718 SE2d 801) (2011); *Youngblood v. Gwinnett Rockdale Newton Community Svc. Bd.*, 273 Ga. 715, 716 (1) (545 SE2d 875) (2001); *Miller v. Ga. Ports Auth.*, 266 Ga. 586, 587-589 (470 SE2d 426) (1996)). The Court of Appeals considered the language of the Act and the purposes for which the Authority was created, saying that "the Authority is a public corporation using public funds to perform for the City what the General Assembly has deemed to be an essential public and governmental purpose." *Guy*, 372 Ga. App. at 328-329 (2). The panel acknowledged that in recent decisions the Court of Appeals had rejected particular housing authorities' claims of sovereign immunity as an instrumentality of the State. Id. at 328 n.7 (citing *Files v. Housing Auth. of the City of Douglas*, 368 Ga. App. 455, 465 (1) (890 SE2d 356) (2023); *Pass v. Athens Housing Auth.*, 368 Ga. App. 445, 454 (1) (890 SE2d 342) (2023)). But, given its conclusion that the Authority was an instrumentality of the City,

6

the panel said that it did not need to consider the trial court's alternative bases for its ruling, i.e., that the Authority was entitled to sovereign immunity as a municipal corporation or an instrumentality of the State of Georgia. See *Guy*, 372 Ga. App. at 328 n.7.[1]

Guy filed a petition for a writ of certiorari, which we granted. In granting her petition, we posed the question of whether the Housing Authority is "entitled to sovereign immunity[.]"

Article I, Section II, Paragraph IX of the Georgia Constitution contains an explicit conferral of immunity: "Except as specifically provided in this Paragraph, sovereign immunity extends to the state and all of its departments and agencies." Ga. Const. of 1983, Art. I, Sec. II, Par. IX (e). We have said that municipalities enjoy immunity "akin" to the immunity afforded to the State and that

---

[1] The Court of Appeals observed that Guy did not "meaningfully challenge" the trial court's conclusion that there was no waiver of sovereign immunity. *Guy*, 372 Ga. App. at 326 n.2. The court also stated that "Guy does not assert liability as to the Authority on the basis that it was negligent in performing ministerial duties" under OCGA § 36-33-1 (b). Id. at 327 n.6. Neither of those questions is before us.

"municipalities enjoy[] the same immunity as the State in their performance of acts which are legislative or judicial in nature, on the ground that such acts are deemed to be but the exercise of a part of the state's power." *Gatto v. City of Statesboro*, 312 Ga. 164, 166 (1) (860 SE2d 713) (2021) (citation and punctuation omitted).[2] But we also have squarely held that the sovereign immunity provided for in Article I, Section II, Paragraph IX does not apply to municipalities. See id. at 166 (1) n.3 (citing *City of Thomaston v. Bridges*, 264 Ga. 4, 7 (499 SE2d 906) (1994)). Rather, we have pointed to Article IX, Section II, Paragraph IX as "recognizing" the immunity of municipalities, stating that, "[t]hough originating in the common law, the doctrine of municipal immunity now enjoys constitutional status." *Gatto*, 312 Ga. at 166 (1). And we have said that OCGA § 36-33-1 (a), a provision cited by the Court of Appeals here, "reiterates" that municipal corporations are protected by sovereign immunity. See *City of Atlanta v. Mitcham*, 296 Ga. 576, 577 (1) (769

---

[2] We sometimes refer to the sovereign immunity of municipalities as "municipal immunity" or "governmental immunity." See *Gatto*, 312 Ga. at 164 n.1.

8

SE2d 320) (2015); see also *Atlantic Specialty Ins. Co. v. City of College Park*, 313 Ga. 294, 299 (2) (869 SE2d 492) (2022); *Gatto*, 312 Ga. at 166 (1). Our case law thus makes clear that sovereign immunity extends to municipalities themselves. See *Atlantic Specialty Ins. Co.*, 313 Ga. at 299 (2); *Gatto*, 312 Ga. at 166 (1).

But Article IX's reference to "the immunity of . . . municipalities" does not extend that immunity any further. Unlike Article I's immunity provision, which includes the affirmative "sovereign immunity extends to [the State's] departments and agencies" language, the Article IX provision does not explicitly extend any immunity, but, rather, provides only for the *waiver* of immunity. The Article IX municipal immunity provision is only one sentence: "The General Assembly may waive the immunity of counties, municipalities, and school districts by law." Ga. Const. of 1983, Art. IX, Sec. II, Par. IX. Thus, the Georgia Constitution does not actually confer any sovereign immunity beyond the immunity conferred in Article I on "the state and all of its departments and agencies." See R. Perry Sentell, Jr., *Local Government Tort Liability:*

9

*The Summer of '92*, 9 Ga. St. U. L. Rev. 405, 408 (1993) ("For 'counties, municipalities, and school districts,' Article IX . . . assumed existence of their immunity and restricted to 'the General Assembly' the power of waiving that immunity 'by law.'"). In other words, all the Article IX provision does for municipalities is preserve whatever sovereign immunity existed for them at common law and make clear that the General Assembly may waive it. The Article IX sovereign immunity provision also does not include language equivalent to the "departments and agencies" language found in Article I.

OCGA § 36-33-1 (a) contains language that sounds more like an extension of immunity: "[M]unicipal corporations shall be immune from liability for damages." But it also contains no language similar to the "departments and agencies" language of the Article I sovereign immunity provision. Any sovereign immunity for "departments and agencies" or "instrumentalities" of a municipality would be a product of the common law of England as of May 14, 1776, which the General Assembly adopted in 1784. See *Walmart Stores*

*E., LP v. Leverette*, __ Ga. __, __ (II) Case No. S24G1104 (decided June 24, 2025) ("The common law of England has long been the 'backstop law' of Georgia.").

As noted above, the Court of Appeals concluded here based on its own precedent that "sovereign immunity extends, as it did at common law, to instrumentalities of a municipal corporation." *Guy*, 372 Ga. App. at 327. The Court of Appeals then analyzed the question of whether the Authority is an instrumentality of the city of Augusta by applying our case law as to whether an entity is an instrumentality of the State. See id at 327-330. But the case on which the Court of Appeals relied for the proposition that sovereign immunity extended at common law to "instrumentalities of a municipal corporation," *Hospital Authority of Fulton County v. Litterilla*, does not stand for that proposition. The Court of Appeals's ruling in that case did not analyze whether "instrumentalities of a municipal corporation" were protected by sovereign immunity at common law, as the case instead involved a hospital authority established by a *county*. See *Hosp. Auth. of Fulton County*, 199 Ga.

11

App. at 345-347 (1).[3] And the case law of this Court on which the Court of Appeals primarily relied to determine that the Authority was an instrumentality of a city was all decided under Article I, specifically relying on the "departments and agencies" language of Article I's sovereign immunity provision. See *Kyle*, 290 Ga. at 88-91 (1); *Youngblood*, 273 Ga. at 715-716 (1); *Miller*, 266 Ga. at 586-587. As noted above, Article I's sovereign immunity provision does not apply to municipalities, and the Georgia Constitution does not otherwise explicitly confer sovereign immunity on municipalities. And neither Article IX's reference to the immunity of municipalities nor OCGA § 36-33-1 (a)'s recognition of immunity for "municipal corporations" includes a reference to "departments and agencies" of municipalities. So the case law on which the Court of Appeals relied to conclude that the Authority is protected by sovereign immunity

---

[3] Moreover, when we reviewed the Court of Appeals's opinion in that case on certiorari, we limited our review to the Court of Appeals's waiver analysis, and assumed only for purposes of the appeal that the hospital authority was protected by sovereign immunity absent a waiver. See *Litterilla*, 262 Ga. at 35. We also questioned that assumption, saying "there is arguable merit to the position that hospital authorities are not entitled to assert sovereign immunity[.]" Id. at n.1.

12

as an "instrumentality" of a city has no application here.

Whether an entity is covered by sovereign immunity as a matter of common law must be answered by examining the common law of England as of May 14, 1776. See *Walmart Stores E.*, __ Ga. at __ (II) (A) (1). It cannot be answered merely by examining just any Georgia decisional law on sovereign immunity, although some such decisional law may be useful to that process to the extent that it examines the common law of England or otherwise reflects it. See, e.g., *State v. Cook*, 317 Ga. 659, 663 (1) (893 SE2d 670) (2023) (distinguishing between "common law" understanding of term "peace officer" and how that understanding "is also reflected in Georgia statutory and decisional law"); *Crum v. Jackson Nat'l Life Ins. Co.*, 315 Ga. 67, 75-76 (2) (c) (ii) (880 SE2d 205) (2022) (distinguishing between "the body of common law from England that our General Assembly adopted in the late eighteenth century" and "a body of decisional law that interprets and applies" statutes that since have been repealed).

Because of the framing of this question in the Court of Appeals,

13

the briefing on the issue of the Authority's sovereign immunity before this Court does not engage with the common law in a way that aids our consideration of the question under the proper analysis.[4] And because no court has yet performed an analysis of the

---

[4] The Authority in its briefing to this Court alludes to the idea that Article IX, Section II, Paragraph IX is merely a waiver provision, and it purports to analyze whether it is cloaked in immunity as a matter of common law, positing that "all levels of government," including municipalities, are protected by sovereign immunity, including "instrumentalities" of government when performing certain functions. But the premise that "all levels" of government, including cities, have sovereign immunity begs the question of whether the *Authority* enjoys that immunity. And although the Authority acknowledges that "governmental immunity" in Georgia is a continuation of English common law, and although the Authority discusses case law from Georgia and other states "also deriving from English common law," it does not examine the question of whether a municipal authority (or its common law equivalent) was protected by sovereign immunity under English common law as it existed in 1776.

The Authority suggests that our decision in *Knowles v. Housing Authority of City of Columbus*, 212 Ga. 729 (95 SE2d 659) (1956), supports a conclusion that the Authority has immunity here, on the notion that *Knowles* started from the premise that the Authority has immunity before proceeding to a waiver analysis based on the sue-and-be sued language of the authorizing legislation. But although this Court in that case referenced lower court conclusions that the housing authority in that case was "an instrumentality of the State which performs governmental functions, and is therefore immune from tort actions[,]" the Court's analysis focused exclusively on the waiver question. Id. at 730 ("The controlling question in this case is the effect of the 'sue and be sued' clause in our housing act."). Thus, *Knowles* does not stand for the proposition that municipal housing authorities are protected by sovereign immunity, either as instrumentalities of the State or because of their relationship with a municipality. See *Palmer v. State*, 282 Ga. 466, 468 (651 SE2d 86) (2007) ("[D]ecisions of this Court do not stand for points that were

14

common law for us to review, and because it would be imprudent to reach out and decide that question ourselves in the first instance based on the briefing before us, we vacate the Court of Appeals's judgment and remand this case for consideration of the issue of the Authority's immunity under the proper analytical approach.[5] See *Clayton County v. City of College Park*, 301 Ga. 653 (803 SE2d 63) (2017) (vacating trial court's judgment and remanding case for consideration of "complex and important" sovereign immunity question that had not been addressed by the lower court or adequately briefed by the parties).[6]

---

neither raised by the parties nor actually decided in the resulting opinion," and "questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents." (citation and punctuation omitted)). Incidentally, we note that we subsequently have overruled *Knowles*'s holding that statutory language giving an entity the power "to sue and be sued," now found at OCGA § 8-3-30 (a) (1) in the Housing Authorities Law, amounts to a waiver of sovereign immunity. See *Self v. City of Atlanta*, 259 Ga. 78, 80 (1) (377 SE2d 674) (1989).

[5] Another question that may be at issue on remand is whether the fact that Augusta and Richmond County are now a consolidated government is relevant to the sovereign immunity analysis, given that our precedent makes clear that counties enjoy the sovereign immunity conferred by Article I, while cities do not.

[6] On remand, the Court of Appeals will have the discretion to decide whether to answer the question itself or to remand for the trial court to first

15

*Judgment vacated, and case remanded. Warren, PJ, and Bethel, Ellington, McMillian, LaGrua, Colvin, and Pinson, JJ, concur.*

---

address the issue. The Court of Appeals did not consider the other bases for immunity for the Authority identified by the trial court — as an instrumentality or the State, or as a municipal corporation — and thus we do not consider those here, either.